1   K.T. Cherian (SBN 133967)
    Duane H. Mathiowetz (SBN 111831)
2   Henry C. Su (SBN 211202)
    HOWREY LLP
3   525 Market Street, Suite 3600
    San Francisco, California 94105
4   Telephone: (415) 848-4900
    Facsimile: (415) 848-4999
5
    Attorneys for Plaintiff
6   O2 MICRO INTERNATIONAL LIMITED

7

8                     UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11  MONOLITHIC POWER SYSTEMS, INC., a        ) Case No. C 04-2000 CW
    Delaware corporation,                    )
12                                           ) Case No. C 06-02929 CW
              Plaintiff,                      )
13                                           ) **NOTICE OF MOTION AND MOTION BY**
         vs.                                 ) **PLAINTIFF O2 MICRO**
14                                           ) **INTERNATIONAL LIMITED FOR**
    O2 MICRO INTERNATIONAL LIMITED, a        ) **SUMMARY JUDGMENT BASED ON**
15  Cayman Islands corporation,              ) **COLLATERAL ESTOPPEL;**
                                             ) **MEMORANDUM OF POINTS AND**
16            Defendant.                      ) **AUTHORITIES IN SUPPORT; OPENING**
                                             ) **CLAIM CONSTRUCTION BRIEF UNDER**
17  ─────────────────────────────────────   ) **PATENT LOCAL RULE 4-5(A)**
                                             )
18  AND RELATED COUNTERCLAIMS.               )
    ─────────────────────────────────────   ) Date: October 13, 2006
19                                           ) Time: 10:00 a.m.
    O2 MICRO INTERNATIONAL LIMITED, a        ) Courtroom: 2, 4th Floor
20  Cayman Islands corporation,              ) Judge: Claudia Wilken
                                             )
21            Plaintiff,                      )
                                             )
22  MONLITHIC POWER SYSTEMS, INC. a          )
    California corporation, *et al.,*         )
23                                           )
              Defendants.                     )
24  ─────────────────────────────────────   )
    AND RELATED COUNTERCLAIMS, CROSS-        )
25  CLAIMS AND THIRD PARTY CLAIMS            )
    ─────────────────────────────────────   )

26

27

28

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ............................................. 1

I.      INTRODUCTION .................................................................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ........................................................... 2

III.    STATEMENT OF UNDISPUTED FACTS ........................................................................ 2

IV.    ARGUMENT ....................................................................................................................... 4

        A.     Collateral Estoppel Is an Issue Appropriate for Summary Judgment .............................. 4

        B.     MPS Controlled the Sumida Litigation and Is Therefore Bound by That Judgment ........................................................................................................ 7

        C.     MPS's Purported Termination of the Indemnity Agreement Two Weeks before Trial Does Not Forestall the Application of Collateral Estoppel .................................................................................................... 10

        D.     Traditional Notions of Privity Between MPS and Sumida Also Dictates that MPS Be Collaterally Estopped .................................................... 12

        E.     The Remaining Defendants Infringe By Using MPS Products ...................................... 13

V.     THE COURT SHOULD ADOPT CLAIM CONSTRUCTIONS CONSISTENT WITH THE ORDER ISSUED IN TEXAS. ....................................... 14

        A.     Related Cases and Prior Claim Constructions ................................................. 14

VI.    BASED ON CORRECT CLAIM CONSTRUCTIONS, O2 MICRO IS ENTITLED TO SUMMARY JUDGMENT OF INFRINGEMENT AND VALIDITY OF THE ASSERTED CLAIMS ............................................................ 16

VII.   CONCLUSION ................................................................................................................. 17

**HOWREY LLP**

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

# TABLE OF AUTHORITIES

## CASES

*Aetna Casualty & Surety Co. v. Hase,*
    390 F.2d 151 (8th Cir. 1968) ...........................................................................12

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
    377 U.S. 476, 485-86 (1964) ...........................................................................10

*Ashe v. Swenson,*
    397 U.S. 436 (1970) ...........................................................................................5

*B. Roth Tool, Co. v. Amsterdam Casualty Co.,* |
    161 F. 709, 712 (8th Cir. 1908) .......................................................................12

*Brothers, Inc. v. W.E. Grace Mfg.,*
    261 F.2d 428 (5th Cir. 1958) ..............................................................................9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...........................................................................................4

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.,*
    246 F.3d 1336, 1361 (Fed. Cir. 2001) ..............................................................13

*Dana v. E.S. Originals, Inc.,*
    342 F.3d 1320 (Fed. Cir. 2003) ..........................................................................4

*Del Mar Avionics, Inc. v. Quinton Instrument Co.,*
    645 F.2d 832 (9th Cir. 1981) ..............................................................................8

*General Mill, Inc. v. Hunt-Wesson, Inc.,*
    103 F.3d 978 (Fed. Cir. 1997) ............................................................................4

*Headwaters Inc. v. U.S. Forest Service,* |
    399 F.3d 1047 (9th Cir. 2005) ............................................................................4

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
    909 F.2d 1464, 1469 (Fed. Cir. 1990) ..............................................................13

*Irwin v. Mascott,*
    370 F.3d 924 (9th Cir. 2004) ..........................................................................7, 9

*Kourtis v. Cameron,*
    419 F.3d 989 (9th Cir. 2005) ......................................................................5, 6, 12

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005) ........................................................................10

*Montana v. United States,*
    440 U.S. 147, 153 (1979) ........................................................................4, 5, 7, 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
    442 F.3d 741 , 746 (9th Cir. 2006) ...................................................................12

**HOWREY LLP**

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

*Souffront v. Compagnie des Sucreries,*
    217 U.S. 475 (1910) ..................................................................................................... 7

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,*
    322 F.3d 1064, 1081 (9th Cir. 2003) ........................................................................ 12

*Techsearch LLC v. Intel Corp.,*
    286 F.3d 1360, 1369 (Fed. Cir. 2002) ..................................................................... 16

*Tidewater Patent Development Co. v. K.M. Kitchen,*
    421 F.2d 680 (4th Cir. 1970) ..................................................................................... 9

*TRW, Inc. v. Ellipse Corp.*
    495 F.2d 314 (7th Cir. 1974) ..................................................................................... 9

*United States v. Geophysical Corp.,*
    732 F.2d 693 (9th Cir. 1984) ..................................................................................... 9

*United States v. Schimmels,*
    127 F.3d 875 (9th Cir. 1997) ................................................................................ 6, 12

*United States v. Smith-Balthier,*
    424 F.3d 913 (9th Cir. 2005) ..................................................................................... 4

**STATUTES**

35 U.S.C. §271 ......................................................................................................... 10

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................. 4

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on Friday, October 13, 2006, at 10:00 a.m., before the Honorable Claudia Wilken in Courtroom 2, 4th Floor, in the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiff O2 Micro International Limited ("O2 Micro") will move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure that Defendants Monolithic Power Systems, Inc. ("MPS"), Advanced Semiconductor Manufacturing Corporation of Shanghai, Limited ("ASMC"), AsusTek Computer, Inc. ("AsusTek"), and Compal Electronics, Inc. ("Compal") infringe claims 1, 2, 9 and 18 of U.S. Patent No. 6,396,722 ("the '722 patent"), as a result of the application of the doctrine of collateral estoppel. This Motion is based on the memorandum of points and authorities set forth below, the accompanying declarations, exhibits, and proposed order, the oral arguments of counsel at the hearing on this motion, and all other pleadings and matters of record in these actions.

O2 Micro seeks the entry of summary judgment of infringement of claims 1, 2, 9 and 18 of the '722 patent against MPS, ASMC, AsusTek and Compal. A proposed Order accompanies this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES; CLAIM CONSTRUCTION BRIEF**

## I. INTRODUCTION

MPS is estopped from re-litigating the validity of claims 1, 2, 9, 12 and 18 of the '722 patent and whether its full bridge inverter controller chips, when used as intended, infringe claims 1, 2, 9 and 18 of that patent.[1] The validity of the '722 patent and its infringement by the manufacture, use, sale and offer for sale of MPS's inverter controller products has been fully adjudicated by a Texas court, and final judgment has been entered accordingly. MPS not only participated in that prior lawsuit against its customer Taiwan Sumida Electronics, Inc. ("Sumida"), but it was obligated to defend, pay all expenses and liabilities, and control the litigation pursuant to an indemnification agreement it had with Sumida. Because MPS had an interest in the outcome of the prior litigation and in fact controlled it, the law dictates that MPS be treated like a party to the litigation with respect to issue preclusion.

---

[1] O2 Micro does not seek summary judgment of infringement as to claim 12 of the '722 patent, for the reason set out below.

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

1

Consequently, MPS is estopped from litigating the issues of validity and infringement that were determined on the merits in the Sumida litigation. Likewise, the remaining defendants are similarly estopped.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

This Motion raises the following issues for decision by this Court:

1.    Should MPS be collaterally estopped from relitigating the issue of validity of claims 1, 2, 9, 12 and 18 of the '722 patent and the issue of infringement of claims 1, 2, 9 and 18 of the '722 patent by its full bridge inverter controller chips because it participated in and controlled the defense of the Texas patent infringement case against its customer Sumida, in which these issues were actually litigated and necessarily decided?

2.    Should summary judgment be entered against ASMC, Compal and AsusTek on the issue of their direct or indirect infringement of claims 1, 2, 9 and 18 of the '722 patent to the extent that their accused products and activities involve the manufacture and use of MPS's full bridge inverter controller chips?

## III.    STATEMENT OF UNDISPUTED FACTS

In October 2001, O2 Micro brought an action against MPS in this Court for infringement of U.S. Patent No. 6,259,615 ("the '615 patent") and for trade secret misappropriation, Case No. 04-01-cv-03995-CW (hereinafter "the Oakland '615 Litigation"). In May 2002, the '722 patent issued as a continuation of the '615 patent. In December 2002, MPS agreed to indemnify its customer, Sumida, for any patent infringement action brought by O2 Micro where the charge of infringement was based on the use of an MPS product. (Mathiowetz Decl.¶3, Exh. A, the MPS Indemnity Agreement, hereinafter "MPSIA"). The MPSIA provided that "MPS shall have sole control of any such Action or settlement negotiations, and MPS agrees to pay any and all expenses, losses, damages, demands, liabilities and expenses (including attorney's fees and court costs), and final judgment entered against SUMIDA, or settlement amount agreed to by MPS…" *Id.*

On January 6, 2003, two weeks after MPS agreed to indemnify and control litigation against Sumida, O2 Micro brought suit against Sumida in the United States District Court for the Eastern District of Texas, Civil Action No. 2:03-CV-0007 TJW (hereinafter "the Sumida litigation") for

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

2

infringing the '615 and '722 patents. (Mathiowetz Decl.¶4, Exh. B.) MPS immediately took over the defense of Sumida. It retained and thereafter paid and directed Sumida's trial counsel, Kenyon and Kenyon, and controlled the Sumida litigation for the next two and a half years. (Mathiowetz Decl.¶¶5-18, Exs. C-K) In addition to Kenyon and Kenyon, at least eleven outside attorneys from the Wilson Sonsini and Cooley Godward firms, who represent MPS, were involved with the Sumida litigation. MPS' current lead counsel, Thomas Friel, had been retained to "tak[e] over the litigation on behalf of MPS with O2," including "certain aspects" of the Sumida litigation, including among other reasons, "to prepare trial witnesses on validity, infringement, and other technical issues common to Sumida and MPS that might bind MPS in future litigation." (Mathiowetz Decl. ¶12-13 , and Exh. K, Tatum Depo. Tr. at 130-131, 146-151, 216-217). MPS's CEO and President, Michael Hsing, also attended the mediation between Sumida and O2, consistent with the provision in the MPSIA providing that MPS would control settlement. (Mathiowetz Decl.¶14, Exh.H).

Two weeks before trial in the Sumida litigation was set to begin, however, MPS alleged that Sumida was not adequately assisting MPS <u>in the '615 litigation</u> (to which Sumida was not a party). MPS abruptly terminated the indemnity agreement with Sumida even though the MPSIA states only that Sumida was to provide assistance in cases where it was a party. (*Id.* Exh. A.)

Notwithstanding the purported termination, MPS continued to control and direct the litigation. MPS's current lead trial counsel in this case, Thomas Friel, attended trial on MPS's behalf and reported directly during trial to an MPS senior executive team. (Mathiowetz Decl. ¶12.) Mr. Friel and the Cooley firm assisted with witness preparation. (Mathiowetz Decl., ¶12, Exh. K Tatum Tr. at 146-151.) Four of the five witnesses Sumida presented were either MPS employees or persons paid by MPS, including the technical expert, Mr. Brown (who was also MPS's expert in the '615 litigation), and the patent attorney, Bert Magen, who authored a noninfringement opinion on behalf of MPS that was adopted by Sumida. (Mathiowetz Decl., ¶15) MPS also continued to pay all Sumida's costs in the litigation. (Mathiowetz Decl.¶¶10, 18, Exh. F**.)**

On November 17, 2005, a jury found, among other things, that claims 1, 2, 9, 12 and 18 of the '722 patent are valid and that Sumida's use of the MPS chips infringed claims 1, 2, 9, 12 and 18 of that patent. (Mathiowetz Decl.¶17, Ex. J). Final judgment was entered in accordance with the verdict on

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

3

April 12, 2006. (Mathiowetz Decl. ¶17, Ex. J.) O2 Micro now seeks summary adjudication that MPS is not permitted to re-litigate the issue of validity of claims 1, 2, 9, 12 and 18 of the '722 patent and the issue of infringement of claims 1, 2, 9 and 18 of that patent based on the application of the doctrine of collateral estoppel. As explained below, however, O2 Micro does not seek an order precluding MPS from challenging infringement of claim 12 of the '722 patent.

## IV.   ARGUMENT

### A.   Collateral Estoppel Is an Issue Appropriate for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *General Mill, Inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 980 (Fed. Cir. 1997), citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only if "sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party." *Id*. Although collateral estoppel is based on a mixture of law and fact, legal issues predominate and estoppel is a matter is for judicial (not jury) determination, reviewed *de novo* on appeal. *See Headwaters Inc. v. U.S. Forest Service,* 399 F.3d 1047, 1051 (9th Cir. 2005). The law of the regional circuit where the case is pending applies regarding the application of collateral estoppel in patent cases. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003).

The primary goal in civil litigation is the conclusive resolution of disputes. The doctrine of collateral estoppel, also know as issue preclusion, was established to further this goal:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction…cannot be disputed in a subsequent suit between the same parties or their privies….Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [cites omitted.] Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Montana v. United States,* 440 U.S. 147, 153 (1979). *See also United States v. Smith-Balthier,* 424 F.3d 913, 919 (9th Cir. 2005) ("The collateral estoppel doctrine cautions litigants that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &                    4
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

litigated between the same parties in any future lawsuit.'") (quoting *Ashe v. Swenson,* 397 U.S. 436, 443 (1970)). Thus, once issues have been actually and necessarily decided as part of a final judgment, a party to that litigation may not contest those issues in a subsequent suit. This rule fosters reliance on judicial action by minimizing the possibility of inconsistent decisions, protects litigants from the expense attending multiple lawsuits, and conserves judicial resources. *Montana*, 440 U.S. at 153. In the Ninth Circuit, a prior federal court decision has preclusive effect where:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005).

Here, the material facts relating to the first two elements can be readily addressed as they are not in dispute. First of all, the issues of validity and infringement of the '722 patent are clearly identical to those in this litigation. As Sumida stated in its motion to transfer:

> The legal issues involved in this case and the California Action are so substantially similar that any proceedings in this case will duplicate what has taken place over the last three years in California, . . . The inverter modules accused in this action contain the same MPS inverter controllers as in the California Action, and O2 Micro's infringement theories are essentially the same. As noted above, the MPS MP1011A and MP1015 are at issue in both here and in the California Actions.

8/6/04 Sumida Motion to Transfer at 7 (footnotes omitted). MPS agreed as well, alleging in its Complaint for Declaratory Judgment filed in this action (Case No. C 04-2000 CW) that "[s]imilar claims will also be at issue for the '722 patent" and "[t]he accused Sumida Taiwan inverter modules contain one or more of the MPS MPS MP1010, MP1011, and/or MP1015 inverter controllers." Compl. ¶ 10. The issues in the Sumida action thus meet the Ninth Circuit's test for identity: "[r]elevant considerations include whether there is a substantial overlap between the evidence in the two cases and whether both suits involve application of the same rule of law." *Kourtis,* 419 F.3d at 995.

The second element of collateral estoppel is also easily satisfied because the Sumida action has ended with a final judgment on the merits, based on the validity and infringement issues that were necessarily decided by the jury. Specifically, the jury in the Sumida litigation explicitly found that

Howrey LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

5

claims 1, 2, 9, 12 and 18 of the '722 patent were valid and infringed by the MPS products at issue here. (Mathiowetz Decl. Ex. F). In fact, the final judgment specifically identifies MPS model numbers MP1010, 1011, 1015, 1010B, 1017, 1018, 1025 or any other models belonging to the same family of inverter controllers, or those which are colorable imitations of those products, as infringing the '722 patent. Moreover, all the MPS products at issue in this case are structurally identical to the products at issue in the TSE Litigation. At the Sumida trial, O2 Micro's technical expert, Dr. Rhyne, based his infringement analysis of Claims 1, 2, 9 and 18 primarily on MPS's datasheets and application notes. With claims 1, 2, 9 and 18, all limitations were found in the actual MPS products themselves or were found in components that cannot be varied in a way to affect the infringement analysis. Importantly, claims 1, 2, 9 and 18 do not have the "only if" limitation that this Court previously found MPS not to have infringed in the Oakland '615 Litigation.[2]

Thus, the only remaining issue is whether the party to be precluded in this action, MPS, is deemed to be in privity with the party in the prior action, Sumida. "Privity" is defined as "a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *United States v. Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997). It can be found to exist based on "several well-defined categories of relationships, including co-owners and co-tenants of property, assignors and assignees, and indemnitors and indemnities." *Kourtis,* 419 F.3d at 996. The Ninth Circuit recognizes, however, that privity may also be based upon "an array of disparate circumstances summarized under the

---

[2] With respect to Claim 12, O2 Micro's technical expert, Dr. Rhyne, testified that Sumida's component selection caused its inverter modules to operate differently from MPS' reference design for purposes of the infringement analysis. In particular, selection of values of the capacitors in the capacitor divider changed the manner in which the open lamp shutdown operated. "Q. And what's the significance of changing the values of the capacitors and the capacitor dividers as you go from the referenced design to the -- to the actual design? A. It will change the manner in which the old lamp shutdown operates." (TSE Trial Transc., Nov. 14 AM, p. 147) In addition, Sumida changed the delay period for the open lamp shutdown time. "Q. And does the MPS datasheet that we've been looking at recommend a delay period for the shutdown? A. They suggest one second in the datasheet. Q. Does Taiwan Sumida follow that recommendation for shutdown time? A. No, they do not." (*Id.*) Since O2 Micro maintained at the Sumida trial that the Sumida inverter modules were different than the MPS reference design, it does not seek to preclude MPS from challenging infringement of Claim 12 of the '722 patent.

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &     6
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

heading of 'virtual representation.'" *Id.* Particularly pertinent here is the circumstance under which the non-party to be collaterally estopped has had substantial participation or control in the named party's litigation. *Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004) ("Substantial participation or control by the non-party in the named party's suit weighs heavily in favor of a finding of virtual representation.").

As discussed in more detail below, MPS has admitted that it controlled the Sumida litigation at least through August 30, 2005, and the evidence demonstrates that MPS continued to pay Sumida's costs in the litigation even after August 30, 2005. (Mathiowetz Decl.¶¶10,18, Exs. E -F). Lastly, virtually all the witnesses presented at trial in the Sumida litigation were MPS employees or experts paid by MPS, and MPS's lead attorney attended each day of trial (Mathiowetz Decl.¶¶11-15, 18) Given these undisputed facts, the only issue is whether, as a matter of law, collateral estoppel can be applied against MPS even though it was not a named party in the Sumida litigation. Applying the law of collateral estoppel in the Ninth Circuit to the undisputed facts in this case, it is clear that MPS should be precluded from re-litigating the issues of validity or infringement of the '722 patent.

## B. MPS Controlled the Sumida Litigation and Is Therefore Bound by That Judgment

The Supreme Court has determined that the principles underlying collateral estoppel are implicated when non-parties such as MPS exert control over litigation in which they have a direct financial or proprietary interest and then seek to re-determine issues previously resolved:

> These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved. [footnote omitted.] As this Court observed in *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486-487 (1910), the persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause….[One] who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own…is as much bound…as he would be if he had been a party to the record.

*Id.* at 154.

In *Montana*, the United States argued that it should not be bound by a previous Montana Supreme Court decision upholding a Montana law which imposed a one percent tax on public but not private contractors. The law was initially challenged by a contractor working on a federal dam project.

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

1   *Id.* at 151.  Shortly thereafter, the United States initiated a suit challenging the law, but agreed to stay

2   the litigation pending resolution of the contractor's suit.  *Id.*

3       In finding that the decision in the contractor's suit bound the federal government, the Supreme

4   Court noted that the United States, though not a party, "plainly had a sufficient laboring oar in the state

5   court litigation to actuate principles of estoppel." *Id.* at 156.  The Court based this decision on the

6   United States' review and approval of the contractor's complaint, payment of his attorney's fees and

7   costs, and directing the appeal and filing an amicus brief.  *Id.*

8       Here MPS has taken an even more involved and dominant role in the previous Sumida

9   litigation than the United States took in *Montana*.  The indemnity agreement between MPS and

10  Sumida provided that sole control of the Sumida litigation would be vested in MPS.  (Mathiowetz

11  Decl. ¶¶3, Ex. A ¶2).  Consistent with this provision, MPS selected litigation counsel, paid Sumida's

12  defense costs and had at least eleven outside attorneys participating in or monitoring the pre-trial

13  phases of the litigation. (Mathiowetz Decl. ¶¶6-15).  MPS's lead counsel in this case, Thomas Friel,

14  was present each trial day during the Sumida litigation, and four of the five witnesses who testified on

15  behalf of Sumida at the trial were either MPS employees or its paid experts.  (Mathiowetz Decl. ¶15 ).

16      MPS exerted similar control during settlement discussions in the Sumida litigation.  Michael

17  Hsing, MPS' CEO & Chairman, controlled the mediation between O2 Micro and Sumida.

18  (Mathiowetz Decl.¶14, Exh. H.)  MPS's participation in the pre-trial, trial and settlement aspects of the

19  Sumida litigation demonstrate that MPS controlled that case.  In fact, such control is exactly what MPS

20  reported to the investing public in its10-K filings, certified by its CEO.  (Mathiowetz Decl.¶7, Ex. E)

21      Precluding MPS from challenging validity and infringement under such conditions is consistent

22  with the Ninth Circuit's application of *Montana* in the patent litigation context.  In *Del Mar Avionics,*

23  *Inc. v. Quinton Instrument Co.,* 645 F.2d 832 (9th Cir. 1981), the court held that a non-party

24  manufacturer's participation in a patent infringement case against a distributor of its products

25  precluded the manufacturer from challenging validity and infringement in a later suit.  The *Del Mar*

26  court held that selection and payment of counsel, payment of litigation expenses, a written

27  indemnification agreement, participation in settlement negotiations, and control over the decision to

28  appeal are all indicia of control that necessitate the application of collateral estoppel.  *Id.* at 835; *see*

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &                    8
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

*also TRW, Inc. v. Ellipse Corp.* 495 F.2d 314, 317, 323 (7th Cir. 1974) (accused infringer who was not a party to first infringement suit and whose only participation was to observe trial court proceedings and file an amicus brief on appeal was bound by the judgment of patent validity because of an indemnity agreement to cover costs and any judgment); *Tidewater Patent Development Co. v. K.M. Kitchen*, 421 F.2d 680, 681 (4th Cir. 1970)(non-party manufacturers who took up patent infringement defense of their customers would have been bound by any adverse judgment)(dicta); *Brothers, Inc. v. W.E. Grace Mfg.,* 261 F.2d 428, 430-31 (5th Cir. 1958)(manufacturer of machines was bound by infringement judgment against its distributors when the manufacturer mounted the defense of the case).

As noted above, the Ninth Circuit has deemed this level of involvement sufficient to constitute "virtual representation," which is a recognized basis for applying collateral estoppel. *See, e.g., Irwin*, 370 F.3d at 930 ("Substantial participation or control by the non-party in the named party's suit weighs heavily in favor of a finding of virtual representation."). *United States v. Geophysical Corp.,* 732 F.2d 693, 697 (9th Cir. 1984) ("A person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his 'virtual representative' in the prior action.").

In view of the above precedent from the Supreme Court and the Ninth Circuit, MPS's control of the Sumida litigation rises well above the threshold level necessary to trigger the application of collateral estoppel and prevent it from re-litigating the validity and infringement issues that were decided in the Sumida litigation. Moreover, as indicated above, the findings that O2 Micro seeks to impose on MPS also meet the other requirements of collateral estoppel: the same issues of validity and infringement of the '722 patent were actually and necessarily decided, and final judgment on those issues was entered. Consequently, MPS should be precluded from re-litigating validity of claims 1, 2, 9, 12 and 18 and infringement of claims 1, 2, 9, and 18.

It is undisputed that MPS instructs its customers how to use the MPS products described above. (Mathiowetz Decl. ¶19, Ex. L) MPS supplies the integrated circuit that provides the solution for driving a cold cathode fluorescent lamp ("CCFL") (e.g., as shown in the MPS 1015 data sheet, Id. Ex L Bates No. MPS 029666). It instructs its customers how to use the accused products in notebook and LCD applications and how those products should be properly connected. (Rhyne Decl.¶¶5-

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

9

1   6)   Thus, MPS is liable for infringement both as one who induces and one who contributes to the

2   inducement of another. 35 U.S.C. §271(b) & (c); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials*

3   *Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377

4   U.S. 476, 485-86 (1964).

5        **C.     MPS's Purported Termination of the Indemnity Agreement Two Weeks before**

6             **Trial Does Not Forestall the Application of Collateral Estoppel**

7        MPS will likely argue in response that after two and one half years of controlling every detail

8   of the Sumida litigation, its termination of the MPSIA two weeks before trial allows it to be viewed as

9   a "total stranger" to the Sumida litigation for whom the judgment has no preclusive effects.  This

10  argument is untenable.  MPS cannot refute that pursuant to the indemnity agreement, it was intimately

11  involved in every aspect of the Sumida litigation.  Nor can it refute that it continued to participate in

12  the Sumida litigation even after its alleged termination of the MPSIA by continuing to pay Sumida's

13  bills, having attorneys present at the trial, and having its employees testify voluntarily on behalf of

14  Sumida.  In fact, aside from TSE's president, *every* one of the four live witnesses Sumida called to

15  testify was paid for and controlled by MPS.  These witnesses were:

16       (1)   James Moyer: MPS's co-founder and Chief Design Engineer;

17       (2)   Paul Ueunten: MPS's Vice President of Design Engineering;

18       (3)   Burt Magen: an attorney hired by MPS to provide a non-infringement opinion letter;[3] and

19       (4)   Kip Brown: the defense technical expert at trial[4]

20

21  _____

22  [3] At trial, Dalsun Wu, TSE's president, admitted that he had never even met Mr. Magen.  (*See* TSE
    Trial Transc., Nov. 15, 2005 AM,  p. 82.)  That is because Mr. Magen was MPS's lawyer. (*See id.* at

23  59-60.)  "Q.  So, it was the lawyer for MPS who told you that MPS's products didn't infringe, and
    based on that you decided to continue using them.  Is that your testimony, sir?  A.  I said I have asked

24  MPS.  I have appointed MPS to conduct this task for us." (*Id.*)  MPS paid Mr. Magen for his non-
    infringement report filed on behalf of TSE in the TSE Litigation.  (TSE Trial Transc., Nov. 16 AM, p.

25  128 & 132.)(Mathiowetz Decl.¶16, Ex. I)

26  [4] As admitted by TSE's president: "Q.  Mr. Brown's an MPS expert, isn't he?  A.  That's what I
    heard." (TSE Trial Transc., Nov. 15, 2005 AM, p. 63.)  Mr. Brown admitted that MPS was paying him

27  even for his trial work.  (*Id.*, Nov. 16, 2005 AM, pp. 44-45.)  "Q.   Is MPS paying you to testify in this
    case?   A. I send my bills to the law firm, and they pass them on and MPS sends the checks.   Q. All

28  right. So, MPS is actually paying for you to try to defend Taiwan Sumida in this case; is that right?
    A.  That is correct.  They are paying me to give my expert opinion" (*Id.*) Mathiowetz Decl.¶16, Ex. I)

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &                          10
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

1    These witnesses were prepared in part by Mr. Friel, MPS' lead attorney in the present case, who was

2    present during the Sumida trial. (Mathiowetz Decl.¶¶12,15).

3         Kenyon & Kenyon, the firm MPS selected to represent Sumida, continued to serve as Sumida's

4    counsel after the alleged termination, and was paid by MPS. (Mathiowetz Decl. ¶¶10, 18 Ex. F, Ex. K

5    Tatum Depo Tr. 161:1-6)). Further, throughout the trial, MPS's lawyers continued to participate in the

6    litigation. (Mathiowetz Decl. ¶¶12, 18, Ex. K (Tatum Depo. Tr. 127:14-128:17, 129:5-6, 130:2-7).)

7         MPS's anticipated rejoinder that it ceased participation in the Sumida litigation after it

8    terminated the MPSIA on August 30, 2005 is belied by the facts. MPS's privilege log shows dozens of

9    communications between MPS's counsel and Sumida's counsel regarding the Sumida litigation after

10   the purported termination. The communications cover all aspects of the litigation including: payment

11   of fees (Mathiowetz Decl.¶18, Ex. G entry 7), the common interest between Sumida and MPS

12   (Mathiowetz Decl., Ex. G entry 18), post trial motions (Mathiowetz Decl., Ex. G entry 27), and the

13   litigation budget (Mathiowetz Decl., Exh. G entry 53). The basis for the assertion of privilege in

14   nearly every one of the communications on MPS's privilege log is the alleged existence of a "common

15   interest" with Sumida. This basis is present both before and after the purported termination of the

16   MPSIA. These privilege log entries show that MPS did everything but remain on the sidelines in the

17   Sumida litigation after the purported termination. Instead, MPS and Sumida's interests continued to be

18   aligned and MPS continued to participate in the Sumida litigation.

19        Even if one ignored all these facts and assumed MPS ceased all activity in the Sumida litigation

20   when it terminated the indemnity agreement two weeks before trial, MPS cannot be treated as a "total

21   stranger" to that litigation such that collateral estoppel does not apply. Despite the fact that it

22   participated in and controlled the Sumida litigation for most – if not all – of its duration, MPS would

23   have this Court believe that the Sumida judgment should have no preclusive effect against it. In other

24   words, MPS wants this Court to completely disregard MPS's participation in the Sumida litigation. If

25   this were the rule, the goals of collateral estoppel and res judicata would be completely frustrated.

26   Every company in MPS's position would – as MPS has done here – participate vigorously in its

27   customer's suit, trying to secure the benefits of a finding of non-infringement or invalidity. If faced

28   with a potential negative outcome, it would then terminate its indemnity agreement prior to trial – as

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &          11
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

1  MPS has done here – to avoid the effects of issue preclusion, and then re-litigate the same issues in its

2  own later suit.  This proverbial "second bite at the apple" is precluded by the doctrine of collateral

3  estoppel.

4      A party cannot so simply escape issue preclusion by removing itself from a case at the last

5  minute or refusing to participate when it has an obligation and opportunity to do so.  *This rule has been*

6  *the law for nearly one hundred years.  See B. Roth Tool, Co. v. Amsterdam Casualty Co.*, 161 F. 709,

7  712 (8th Cir. 1908) (insurance company was bound by judgment of insured even though it did not

8  participate in the underlying litigation because of an alleged breach of the insurance contract); *see also*

9  *Aetna Casualty & Surety Co. v. Hase,* 390 F.2d 151, 152, 153 (8th Cir. 1968) (insurer who refused to

10  defend insured in underlying case was bound by judgment and estopped from raising affirmative

11  defenses in subsequent coverage case with insured).

12      **D.    Traditional Notions of Privity Between MPS and Sumida Also Dictates that MPS**

13          **Be Collaterally Estopped**

14      In the Ninth Circuit, whether or not defendant exerts control in a previous relationship, the

15  defendant is collaterally estopped from challenging previously litigated issues if the party was in

16  privity with a party in the earlier litigation.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741 ,

17  746 (9th Cir. 2006); *Kourtis*, 419 F.3d at 994.  "[W]hen the parties are not identical, privity may exist

18  if there is substantial identity between parties, that is, when there is sufficient commonality of interest."

19  *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1081

20  (9th Cir. 2003) (internal quotations omitted).  "[F]ederal courts will bind a non-party whose interests

21  were represented adequately by a party in the original suit." *Schimmels*, 127 F.3d at 881.

22      A traditional instance of privity is where there is an indemnitor-indemnitee relationship.

23  *Kourtis,* 419 F.3d at 994.  An indemnitor is bound by a judgment against its indemnitee whether he

24  participates or not.  *See* Restatement 2d of Judgments, §57.  It is undisputed that in this instance MPS

25  was the indemnitor of TSE, the party that litigated the infringement and validity issues.  (*See*

26  Mathiowetz Decl., Exh. A at 1.)  Pursuant to the Agreement, MPS had the right to defend or at its

27  option to settle any claim, suit or proceeding brought against TSE by O2 Micro.  (*See id.*)  Specifically,

28  MPS was given the "sole control" of any action or settlement negotiations, and MPS agreed to pay any

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

12

1    and all expenses, losses, damages, demands, liabilities and final judgment entered against TSE.  (*Id.*)

2    Thus, MPS's privity with TSE means it is bound by the judgment of validity and infringement entered

3    in the TSE Litigation.

4    **E.    The Remaining Defendants Infringe By Using MPS Products**

5            There are essentially three other defendants before this Court accused of infringing the '722

6    patent – Advanced Semiconductor Manufacturing Corporation Limited ("ASMC"), Asustek, and

7    Compal.  (Although multiple Asustek and Compal entities are named defendants in the Third

8    Amended Complaint, practically the Asustek entities operate as one entity, and the Compal entities

9    operate as one entity for purposes of this lawsuit).  ASMC is a fabrication facility that merely receives

10   MPS's orders for MPS inverter controller chips and manufactures them exactly to MPS' specifications.

11   (Mathiowetz Decl.¶21, Exh. N (Decl. of Zhou Jiangyun of ASMC ¶ 3).)  The MPS products are

12   incorporated into Asustek notebook computers, which are offered for sale, sold and used in the United

13   States, and thereby infringe the Litigated '722 Patent Claims.  (Mathiowetz Decl.¶22, Exh. O (Depo.

14   Tr. of Kevin Tseng (Rough) at 92:17-95:3; 99:21-102:7).)  Asustek uses MPS inverter controllers

15   MP1010B, MP1011, MP1015 and MP1037 in its notebook computers, and follows the MPS reference

16   design.  (Mathiowetz Decl.¶22, Exh.O (Depo. Tr. of Kevin Tseng (Rough) at 92:17-95:3; 99:21-

17   102:7).)  Likewise, Compal uses MP1010, MP1010B, MP1015 and MP1016 inverter controllers in its

18   notebook computers that are offered for sale, sold and used in the United States, and does not deviate

19   from the implementation of the inverter modules that incorporate MPS inverter controllers using

20   MPS's reference designs.  (Mathiowetz Decl.¶20, Exh. M (Declaration of CT Chuang of Compal at ¶¶

21   2-4, 10-11, 13).)

22           Because the parties operate in the same manufacturing, sales and distribution channel, with no

23   changes to the MPS inverter controllers, which have already been found to infringe, and contribute to

24   or induce infringement, they are jointly and severally liable with  MPS.  *See Crystal Semiconductor*

25   *Corp. v. TriTech Microelectronics Intern., Inc.,* 246 F.3d 1336, 1361 (Fed. Cir. 2001) (parties that all

26   knowingly contribute to a particular infringing product are jointly and severally liable if any one of the

27   parties is found to infringe); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.

28   Cir. 1990) (joint and several liability for patent infringement developed from joint tortfeasor principles;

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &                    13
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

all knowing contributors to an infringing product are jointly and severally liable with any party found to infringe).

The other defendants also share a unity of interest with MPS. ASMC is a defendant in this case by virtue of the fact it fabricates infringing products for MPS. ASMC's defense is paid for by MPS, its counsel is provided and paid for by MPS and is the same counsel as MPS is using, and it jointly files pleadings and expert reports with MPS. Asustek and Compal, like TSE, incorporate MPS inverter controllers in their infringing products, and to that extent also share the same interests in this case. (*See* Mathiowetz ¶20, Ex.M.) Asustek is represented by MPS' lawyers at MPS's expense and simply joins in MPS's defense in all aspects, including expert witnesses. Compal is represented by separate counsel, but asserts that with respect to its products that use MPS inverter controllers, that it simply incorporates MPS inverter controllers in the manner suggested by MPS. There are no facts that would cause Asustek and Compal to have any independent defense once MPS has, as a matter of law, been found to infringe by the manufacture and sale of its inverter controller products. (*See* Rhyne Decl. ¶¶3-6 [application of '722 patent claims 1, 2, 9 and 18 to Asustek and Compal's use of MPS inverter controllers is necessarily identical to whether MPS inverter controllers generally infringe because the claims apply to the internal functions of the chip that is not subject to alteration by Asustek or Compal].) Thus, the finding that the '722 patent is valid and that the previously litigated '722 patent claims are infringed by the MPS inverter controllers applies equally to all defendants.

## V.   THE COURT SHOULD ADOPT CLAIM CONSTRUCTIONS CONSISTENT WITH THE ORDER ISSUED IN TEXAS.

### A.   Related Cases and Prior Claim Constructions

Several orders have issued from multiple courts that have construed the relevant terms for the '615, '722, and '129 patents. This Court issued a claim construction order in the Oakland '615 Litigation relevant to the '615 patent. (Mathiowetz Decl.¶23, Exh.P), and Judge Ward issued a claim construction in the Sumida Litigation relevant to the '615 and '722 patents. (Mathiowetz Decl.¶24,Exh. Q.). Additionally, there has been other litigation regarding the '615, 722 and '129 patents:

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

14

- In January 2004, O2 Micro brought an action against Beyond Innovation Technology Co., Ltd. ("BiTEK") and other defendants in this Court, Case No. 2:04-CV-00032 TJW ("BiTEK Litigation"). In the BiTEK Action, O2 Micro alleged infringement of the '615, '722 and '129 Patents based on BiTEK's manufacture and sale of certain inverter controllers, which are used by BiTEK's co-defendants to manufacture inverters.

- In September 2004, O2 Micro brought the instant action against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung SDI Co., Ltd., and Samsung SDI America in the Eastern District of Texas, Case No. 2:04-cv-00323-TJW (the "Samsung Litigation"). As amended in October 2004, O2 Micro's First Amended Complaint alleges infringement of the '615, '722 and '129 patents by all defendants.

- In June 2005, O2 Micro brought an action against Rohm Co., Ltd. and others in this Court, Case No. 2:05CV-211 DF alleging infringement of the '129 Patent and the Sequential Burst Mode Patents by all defendants ("Rohm Litigation").

- In July 2005, O2 Micro brought an action against Hon Hai Precision Industry Co., Ltd. and Ambit Microsystems Corporation in this Court, Case No. 2:05CV-323 TJW alleging infringement of the Converter Patents ("Hon Hai Litigation").

These earlier cases have exhausted the need for this Court to perform any additional construction of claim terms. For example:

- · In the Oakland '615 Litigation, this Court construed various terms in the asserted claims of the '615 patent. (Order Construing Disputed Claims and Terms, Dec. 27, 2002, Mathiowetz Decl.¶23, Ex.P.)

- ▪ In the TSE Litigation, Judge Ward construed various terms in the asserted claims of both the '615 and '722 Patents. (Memorandum Opinion and Order, March 8, 2005, Mathiowetz Decl.¶24, Ex.Q.)

- ▪ In the BiTEK Litigation, Judge Ward construed various terms in the asserted claims of '615, '722 and '129 patents. (Claim Construction Order, Aug. 26, 2005, Mathiowetz Decl.¶25, Ex.R.)

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT & CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

15

- In the Samsung Litigation, Judge Ward issued a claim construction order adopting earlier constructions and deciding additional claim constructions related to the '615, '722, and '129 patents. (Memorandum Opinion and Order, June 28, 2006, Mathiowetz Decl.¶26, Ex.S.)

To date, all orders from both Courts have maintained consistent constructions for the various terms of the '615, '722, and '129 patents, and there is no reason to alter that practice. The previous constructions by both courts should govern this action, and there is no need to construe any additional terms. To the extent O2 Micro or other parties dispute constructions provided in those orders, they should reserve their rights to maintain those disputes on appeal, consistent with their positions in the other cases. But the Court should reject any attempt to re-litigate prior orders in a way that could result in inconsistent and contradictory claim constructions as to the same patent claims and claim terms in different litigations.

For the Court's convenience, O2 Micro submits as Appendix A to this brief a list of claim terms previously construed by this Court or Judge Ward, along with a brief explanation of why each construction was provided.

## VI.  BASED ON CORRECT CLAIM CONSTRUCTIONS, O2 MICRO IS ENTITLED TO SUMMARY JUDGMENT OF INFRINGEMENT AND VALIDITY OF THE ASSERTED CLAIMS

For a claim of patent infringement, "[s]ummary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a jury." *Techsearch LLC v. Intel Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002).

The facts related to the design of the inverter controllers at issue are beyond dispute – they are set out in the defendants' technical documents. Based on these undisputed facts, and applying claim constructions consistent with those previously adopted by this Court and by Judge Ward in the Eastern District of Texas, O2 Micro is entitled to summary judgment of infringement of the asserted claims of the '615, '722 and '129 patents. The claim charts setting forth the undisputed evidence in support of this conclusion are set out in Dr. Rhyne's previous Expert Report (Rhyne Decl.¶2, Exh. 1).

**Howrey LLP**

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

16

Additionally, the disclosures of the asserted prior art are not reasonably disputed. Based on claim constructions consistent with those previously adopted by this Court and by Judge Ward in the Eastern District of Texas, as a matter of law none of the asserted prior art references can invalidate the patent claims at issue in this case.

## VII.   CONCLUSION

MPS controlled and participated in the Sumida litigation with respect to the same patent claims and products – and so it should not be given a second bite at the apple. Instead, the Court should find as a matter of law that MPS is collaterally estopped, and award O2 Micro partial summary judgment, that claims 1, 2, 9, 12 and 18 of the '722 patent are valid, and claims 1, 2, 9, and 18 of the '722 patent are infringed by use of MPS inverter controllers. To the extent the other defendants simply manufacture (ASMC) or use (Asustek and Compal) the infringing MPS inverter controllers, they are jointly and severally liable for infringement. To the extent that other patent claims remain in the case, the Court should apply consistent claim constructions to those already found by Judge Ward by adopting that claim construction order in this case. Alternatively, the Court should issue a claim construction order that is consistent with the one issued by Judge Ward. Collateral estoppel aside, based on those claim construction and the admitted design and function of the MPS inverter controllers, O2 Micro is entitled to summary judgment of infringement and validity.

Dated:  August 18, 2006                              HOWREY LLP


                                                      _/s/ Duane H. Mathiowetz_____
                                                      Duane H. Mathiowetz (SBN 111831)

                                                      Attorneys for Plaintiff
                                                      O2 Micro International Limited

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.

17

HOWREY LLP

1     **CERTIFICATE OF SERVICE**

2     As required by Civil Local Rule 5-6(a)(2), the undersigned hereby certifies that on

3 August 18, 2006, a true and correct copy of:

4     **NOTICE OF MOTION AND MOTION BY PLAINTIFF O2 MICRO INTERNATIONAL LIMITED FOR SUMMARY JUDGMENT BASED ON COLLATERAL ESTOPPEL;**

5 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; OPENING CLAIM CONSTRUCTION BRIEF UNDER PATENT LOCAL RULE 4-5(A)**

6

7 was served on the following counsel of record for Defendants electronically through this Court's

8 Electronic Case Filing System, in accordance with Civil Local Rule 5-5(b):

9     Thomas J. Friel, Jr.                James P. Brogan
        tfriel@cooley.com                  jbrogan@cooley.com

10     Matthew J. Brigham            Chad T. Nitta
        mbrigham@cooley.com          nittact@cooley.com

11     COOLEY GODWARD LLP       COOLEY GODWARD LLP
        3000 El Camino Real             380 Interlocken Crescent, Suite 900

12     Five Palo Alto Square           Broomfield, CO 80021-8023
        Palo Alto, CA 94306            Telephone: (720) 566-4000

13     Telephone: (650) 843-5000     Facsimile: (720) 566-4099
        Facsimile: (650) 857-0663

14

15     Thomas Allan Connop        Randall G. Block
        tconnop@lockeliddell.com      randall.block@sdma.com

16     Charles Edward Phipps       SEDGWICK, DETERT, MORAN & ARNOLD LLP
        cphipps@lockeliddell.com      One Market Plaza

17     LOCKE LIDDELL & SAPP, LLP   Steuart Tower, 8th Floor
        2200 Ross Avenue, Suite 2200    San Francisco, CA 94105

18     Dallas, TX 75201              Telephone: (415) 781-7900
        Telephone: (214) 740-8000     Facsimile: (415) 781-2635

19     Facsimile: (214) 740-8800

20

21     Brian E. Mitchell              Robert Steinberg
        bmitchell@cooley.com          bob.steinberg@lw.com

22     COOLEY GODWARD LLP       Mark A. Flagel
        101 California Street, 5th Floor   mark.flagel@lw.com

23     San Francisco, CA 94111-5800   LATHAM & WATKINS
        Telephone: (415) 693-2000     633 West Fifth Street, Suite 4000

24     Facsimile: (415) 693-2222      Los Angeles, CA 90071-2007
                                     Telephone: (213) 485-1234

25                                    Facsimile: (213) 891-8763

26

27

28

Dean G. Dunlavey
dean.dunlavey@lw.com
LATHAM & WATKINS
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

Kaiwen Tseng
ktseng@orrick.com
Sanjeet K. Dutta
sdutta@orrick.com
Matthew J. Hult
matthult@orrick.com
James Lin
jlin@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

   /s/ Duane H. Mathiowetz
    Duane H. Mathiowetz

HOWREY LLP

O2 MICRO'S MOTION FOR SUMM. JUDGMENT &
CLAIM CONSTRUCTION BRIEF
Case No. C 04-2000 CW
DM_US\8379025.