United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>          Defendant.<br>_____/<br>AND RELATED COUNTERCLAIMS, CROSS-<br>CLAIMS AND THIRD-PARTY CLAIMS.<br>_____/ | No. C 04-2000 CW<br><br>(consolidated with No. C 06-2929 CW)<br><br><br>ORDER GRANTING IN PART O2 MICRO'S MOTION TO STRIKE MPS' COUNTERCLAIMS AND TO STRIKE OR DISMISS MPS' THIRD-PARTY COMPLAINT AND DENYING IT IN PART |

   O2 Micro International Limited moves to strike, dismiss or sever claims and allegations against it contained in Monolithic Power Systems, Inc.'s counterclaims and third-party complaint. Monolithic Power Systems, Inc. (MPS) opposes the motion. The matter was decided on the papers. Having considered the parties' papers, the Court grants O2 Micro's motion to strike or dismiss

MPS' third-party complaint, but grants only in part O2 Micro's motion to strike allegations in MPS' counterclaims, striking MPS' common law fraud allegations.

## BACKGROUND

O2 Micro filed this suit in the Eastern District of Texas, accusing MPS of infringing O2 Micro's U.S. Patent No. 6,804,129 (the '129 patent).[1]  MPS denied liability and counterclaimed against O2 Micro for declaratory judgment of non-infringement, invalidity and unenforceability, unfair competition, intentional interference with contractual relations and current economic relationships, and intentional interference with prospective economic advantage.

O2 Micro amended its complaint, asserting that other corporate entities infringed the '129 patent and that some of those corporate entities also infringed O2 Micro's U.S. Patent No. 6,396,722 (the '722 patent) and its U.S. Patent No. 6,259,615 (the '615 patent). One of these corporate entities was Compal Electronics, Inc., a Taiwanese corporation that manufacturers and sells computer notebooks.  O2 Micro alleges that Compal infringes the patents-in-suit by the manufacture, sale and offer for sale of notebook computers incorporating MPS' inverter controller chips.  Compal buys from Delta Electronics, Inc. (DEI) inverter modules used to light cold cathode fluorescent lamps in notebook computers.  DEI manufactures its inverter modules using MPS' inverter control chips.

---

[1] On October 11, 2006, the Court signed O2 Micro's stipulated dismissal with prejudice of its claim concerning the '129 patent.

2

Compal filed a third-party complaint against DEI, alleging breach of warranties of title and non-infringement, merchantability and fitness for a particular purpose and breach of its obligation to defend, indemnify and hold Compal harmless against claims of patent infringement. DEI then filed a cross-claim against MPS for indemnity for any liability that DEI might have to Compal.

In response, MPS filed a counterclaim against DEI for breach of contract and misappropriation of trade secrets, alleging that DEI breached a Non-Disclosure Agreement that it entered into with MPS and that it gave away MPS' trade secrets to O2 Micro. In the same pleading, MPS included a third-party complaint against O2 Micro. MPS later amended its third-party complaint, alleging the following five claims: (1) trade secret misappropriation; (2) unfair competition under California Civil Code § 17200 and Texas common law; (3) intentional interference with economic advantage under California common law; (4) negligent interference with economic advantage under California common law; and (5) interference with prospective business relationships under Texas common law.

In May, 2006, the action was transferred to this Court. It was consolidated with an action MPS brought in this district against O2 Micro for a declaratory judgment finding the '722 patent invalid and not infringed.

LEGAL STANDARD

I. Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of

3

facts which would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco</u>, 792 F.2d 1432, 1435 (9th Cir. 1986). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).

II. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. <u>See</u> <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994). Matter is immaterial if it has no essential or important relationship to the claim for relief plead. <u>See</u> <u>id.</u> at 1527. Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case. <u>See</u> <u>id.</u>

DISCUSSION

I. MPS' Counterclaims

O2 Micro moves to strike all or part of paragraphs 49-53, 72-73, 82-83 and 91-92. These paragraphs contain the following allegations:

4

O2 Micro claims that the Taiwan patent stems from the same application that O2 Micro filed in the United States for the '615 patent . . . . [T]he Examiner issued an Office Action rejecting all pending claims in the '615 patent application. On or about July 26, 2000 (about three weeks after the USPTO had rejected the '615 patent application's claims), O2 Micro filed the application for the Taiwan patent in the Taiwan Patent Office (the Taiwan Intellectual Property Office, or "TIPO"). With its Taiwan patent application, O2 Micro filed the original claims from the '615 patent application (the very claims that USPTO rejected). . . . O2 Micro did not inform the TIPO about the USPTO's rejection or disclose to the TIPO any of the prior art that the USPTO had relied upon in rejecting the original claims. O2 Micro did so even though Taiwan Patent Law, Article 22 III, required O2 Micro to include the prior art in the specification. . . .

O2 Micro and/or its attorneys deliberately withheld material information from the TIPO, with the intent to deceive the TIPO, in order to obtain the allowed claims of the Taiwan patent . . . .

O2 Micro sought and obtained a preliminary injunction against MPS in Taiwan based on the Taiwan patent, prohibiting MPS from engaging in certain activities as to two MPS products. Subsequently, O2 Micro instituted legal proceedings in Taiwan on the Taiwan patent against certain of MPS's customers for their purchase and/or use of MPS's products.

O2 Micro perpetrated fraud on the USPTO by deliberately failing to disclose material prior art and best mode information during the prosecution of the '016 application and the '417 application. Had O2 Micro disclosed this information, the '129 patent would not have issued, at least not in its current form. O2 Micro's knowing submission to the TIPO of claims that had already been rejected by the USPTO similarly constitutes fraud. . . .

O2 Micro obtained patents through fraud on the USPTO and on the TIPO and has attempted to enforce these fraudulently obtained patents through litigation, threatened litigation, improper settlement demands, and baseless threats of litigation. In addition, O2 Micro misappropriated MPS's confidential information and/or trade secrets, including through persuading customers to breach confidentiality agreements with MPS, and has engaged in a pattern or practice of threatening to initiate litigation against customers, distributors, and suppliers of MPS without a good-faith belief in the validity of its claims and without intending in good faith to initiate the threatened litigation. Through these actions, O2 Micro has attempted to impermissibly expand the scope of its patent grants and such conduct constitutes patent misuse. . . . The acts of O2 Micro alleged herein constitute

5

>     fraud in violation of the United States Patent Act, U.S.C.
>     § 101 et seq., California common law, and the patent laws of
>     the Republic of China.

According to O2 Micro, these allegations are insufficient, as a matter of law, to support MPS' unfair competition and intentional interference claims.

    A.   Inequitable conduct in the United States Patent and Trademark Office (PTO)

First, O2 Micro argues that MPS' allegations concerning inequitable conduct in the PTO should be stricken because they are preempted by federal patent laws.[2] O2 Micro notes that it is well settled that an alleged act of inequitable conduct alone cannot form the basis of an independent tort claim under State law because of federal preemption. Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd., 204 F.3d 1368, 1382 (Fed. Cir. 2000).

O2 Micro acknowledges that State law tort claims are not preempted by federal law "if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1306 (Fed. Cir. 1999) (finding that tortious interference and unfair competition claims premised on a patentee's bad faith in obtaining or enforcing a patent are not preempted by federal law). Nonetheless, it contends that MPS' counterclaims assert that O2 Micro's alleged acts of inequitable conduct,

---

[2] In its reply, O2 Micro states that it seeks to strike paragraphs 72, 76-77, 82-84 and 91-93. Its notice of motion, however, provides that it moves to strike paragraphs 49-53, 72-73, 82-83 and 91-92 only; similarly, its proposed order mentions paragraphs 49-53, 72-73, 82-83 and 91-92, and no other paragraphs.

6

standing alone, are grounds for its State law tortious interference and unfair competition claims. The Court does not agree. See Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470, 1476 (Fed. Cir. 1998) (disagreeing with the district court's conclusion that "a claim of unfair competition predicated in part on inequitable conduct could not, as a matter of law, succeed" and "that this particular state law cause of action turned 'solely' on inequitable conduct"). MPS is not bringing its State law claims based on its inequitable conduct allegations alone. Rather, MPS' unfair competition and intentional interference claims are based only in part on O2 Micro's alleged bad-faith conduct before the PTO.

The Court will not strike any allegations concerning inequitable conduct in the PTO.

B. Inequitable conduct in the TIPO

Next, O2 Micro argues that MPS' allegations of inequitable conduct in the TIPO should be stricken based on the act-of-State doctrine. MPS responds that the act-of-State doctrine does not require the Court to strike the allegations because O2 Micro's alleged fraudulent conduct before the TIPO was not an "official action" of the Taiwanese government.

Under the act-of-State doctrine, an action will be barred only if an official act of a foreign sovereign was performed within its own territory and the relief sought or the defense interposed in the action would require a federal court to declare invalid that official act. Credit Suisse v. U.S. Dist. Ct., 130 F.3d 1342, 1346 (9th Cir. 1997). Thus, the act-of-State doctrine does not apply where "sovereign activity merely formed the background to the

7

dispute or in which the only governmental actions were the neutral application of the laws." Clayco Petroleum Corp. v. Occidental Petroleum Corp., 712 F.2d 404, 406 (9th Cir. 1983).

O2 Micro contends that the grant of the Taiwan patent by the TIPO to O2 Micro was an official act of a foreign sovereign performed within its own territory; it further contends that the relief MPS seeks, and the inequitable conduct defense it alleges, would require the Court to declare invalid or unenforceable the TIPO's official act. But, as MPS notes, the granting of patents "is not the kind of governmental action contemplated by the act of state doctrine." Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287 (3d Cir. 1979). O2 Micro argues that Mannington Mills is factually distinguishable. The factual differences, however, do not alter the Third Circuit's conclusion that "the mere issuance of patents by a foreign power" does not constitute "an act of state, as that term has developed under case law." Id. at 1293-94. As O2 Micro points out, the Ninth Circuit has not addressed whether the grant of a patent by a foreign government and its subsequent enforcement implicates the act-of-State doctrine. In the absence of Ninth Circuit authority, the Court finds persuasive the conclusions concerning patents reached in Mannington Mills. Thus, the act-of-State doctrine is inapplicable.

O2 Micro argues that, even if the act-of-State doctrine does not apply, MPS' unfair competition and intentional interference claims raise comity considerations that this Court should take into account in deciding whether to exercise jurisdiction. The comity considerations at issue in this case, however, do not weigh against

8

the Court's jurisdiction over MPS' claims.

The Court will not strike any allegations concerning O2 Micro's inequitable conduct in the TIPO.

C.  California common law fraud

Finally, O2 Micro argues that the Court should strike MPS' allegations, in paragraphs 83 and 92, that the acts of O2 Micro constitute fraud in violation of California common law.  MPS responds that it is not bringing a claim against O2 Micro for common law fraud.  It does not explain why, in that case, these allegations are material or pertinent.  The Court finds that the allegations of common law fraud are immaterial and impertinent and thus shall be stricken pursuant to Federal Rule of Civil Procedure 12(f).

II.  MPS' Third-Party Claims

O2 Micro moves to strike or dismiss MPS' third-party complaint.  Under Federal Rule of Civil Procedure 14(a), any party may move to strike a third-party claim.

Rule 14(a) provides that "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."  As the Ninth Circuit instructs, a "third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto."  Stewart v. Am. Int'l Oil & Gas Co., 845 F.2d 196, 199-200 (9th Cir. 1988)

(affirming dismissal of third-party complaint when it failed to show the requisite derivative or secondary liability on the part of the third-party defendants). Quoting Professors Wright and Miller, the court in Stewart explained, "The crucial characteristic of a Rule 14 claim is that the defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." Id. at 200 (quoting 6 Wright & Miller, Fed. Practice & Proc. § 1446 at 257 (1971 ed.)).

MPS does not argue that its third-party claims are derivative or secondary to DEI's indemnification claim such that they could have been brought as third-party claims under Rule 14(a). Rather, it accuses O2 Micro of employing a "hyper-technical" pleading requirement. MPS argues that because the claims in its third-party complaint are well-plead counterclaims they should not be dismissed merely because they are mislabeled as third-party claims. But that argument is not supported by the authority MPS cites. In Reiter v. Cooper, 507 U.S. 258, 273 (1993), the Supreme Court treated counterclaims mislabeled as affirmative defenses as properly plead; it did not treat counterclaims mislabeled as third-party claims as properly plead. MPS quotes the Wright and Miller treatise, noting that "courts generally have ignored the nomenclature actually used by the pleader and have treated the claim as if it had been properly labeled." 6 Wright & Miller, Fed. Practice & Proc. § 1407 (2006 ed.). The section quoted, however, concerns the mislabeling

10

of counterclaims and cross-claims, not the mislabeling of third-party claims.

Furthermore, MPS' filing of third-party claims, instead of filing additional counterclaims, does not appear to be an inadvertent mistake of nomenclature.  MPS fails to explain why it mislabeled its counterclaims as third-party claims, nor does it provide the Court with good cause for treating its third-party claims as properly plead counterclaims.  As O2 Micro notes, prior to transfer, the court in the Eastern District of Texas informed the parties that, after November 18, 2005, the parties would be allowed to amend their claims only with a successful motion for leave to do so.  Instead of timely moving to amend its counterclaims to assert a trade secret misappropriation claim, MPS filed its third-party complaint against O2 Micro on December 19, 2005 without leave of court.  Almost a month later, MPS amended its third-party complaint, again without seeking leave to amend, adding additional claims against O2 Micro.

The Court strikes MPS' third-party complaint.  Because the Court grants O2 Micro's motion on this ground, it need not address O2 Micro's remaining arguments.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART O2 Micro's Motion to Strike MPS' Counterclaims and DENIES it IN PART. Specifically, the Court strikes "California common law" in paragraphs 83 and 92, but it does not strike the allegations in MPS' counterclaims of inequitable conduct in the PTO and TIPO.  The Court GRANTS O2 Micro's Motion to Strike or Dismiss MPS' Third-

11

1 party Complaint.  The Court strikes MPS' third-party complaint
2 against O2 Micro.
3     IT IS SO ORDERED.

5 Dated: 10/18/06

_____
CLAUDIA WILKEN
United States District Judge