**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>　　　　Defendant.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MONOLITHIC POWER SYSTEMS, INC., a California corporation, <u>et al.</u>,<br><br>　　　　Defendants.<br>_____/<br>AND RELATED CROSS-CLAIMS AND COUNTERCLAIMS.<br>_____/ | No. C 04-2000 CW<br><br>(consolidated with No. C 06-2929 CW)<br><br><br><br><br>DUTIES AND INSTRUCTIONS FOR COURT-APPOINTED EXPERT PROFESSOR ENRICO SANTI |

If Professor Enrico Santi consents, the Court will appoint him as its expert witness. See Fed. R. Evid. 706. As the court-appointed expert, Professor Santi shall serve as a neutral, independent expert on behalf of the Court on the technology at issue in this case. His duties shall be to provide expert analysis and opinions as to the technical issues in this case, including issues concerning infringement and validity of the asserted claims of U.S. Patent No. 6,396,722 (the '722 patent). Specifically, whether claims 1, 2, 9, 12, 14 and 18 of the '722 patent are infringed literally or under the doctrine of equivalents by the accused products of each Defendant and whether claims 1, 2, 9, 12, 14 and 18 of the '722 patent are invalid in view of the prior art by reason of anticipation or obviousness.

Professor Santi shall have various materials to use as resources when forming his opinions. These materials have been, or will be, provided in organized binders that are labeled and tabbed. The parties believe that these materials may be helpful for Professor Santi to consider for purposes of forming his opinions. He is not limited to these materials, and may request additional information if he believes that it is necessary.

He may give these materials as much weight and consideration as he believes in his professional judgment is required. Some of the materials, such as the parties' summary judgment briefs, may be helpful to consider because they frame the parties' key contentions, but they may also contain attorney arguments and discussions on unrelated legal matters that are not relevant. Some of these materials may also mention two other patents that are

2

related to the '722 patent: U.S. Patent Nos. 6,804,129 (the '129 patent) and 6,259,615 (the '615 patent). The '129 and '615 patents are no longer at issue in this case.

One of the binders that Professor Santi has been given is labeled "O2's Infringement Contentions/MPS's Invalidity Contentions." This binder contains charts setting out certain disclosures the parties must make under the local rules that govern all patent cases in this district. O2 Micro's charts contain its infringement contentions, setting out the '722 patent's asserted claims and, on an element-by-element basis, its theory as to why those elements are found in Defendants' accused products. Similarly, MPS's charts (submitted on behalf of all Defendants) contain their invalidity contentions, setting out the '722 patent's asserted claims and, on an element-by-element basis, their theory as to why those elements are found in specific prior art references.

In addition, the parties have provided Professor Santi with expert reports from their experts, which address all of the issues for which opinions from Professor Santi will be required. Among other things, Professor Santi may look to these reports to provide guidance as to what the experts and the parties believe are the key issues to be addressed in this case. However, it is not his role to critique the parties' experts. His opinions are to be his own independent opinions.

As Professor Santi will see from the parties' expert witness reports, there are some basic rules under patent law that he should follow, including the requirement that he must follow prior court

3

orders interpreting the meaning of certain patent claim terms.  He is not required to provide a detailed analysis of patent law.  The basic law regarding the task will be set out in these instructions, and can also be seen in the expert reports.  If Professor Santi requires further guidance regarding patent law terminology, or the relevant legal standards, this Court can provide him with a copy of the model jury instructions for patent cases here in the Northern District of California.  In addition, he will have the opportunity to ask questions, as described below, in the event that a patent law issue comes up that was not addressed by these materials.

Professor Santi may be asked to provide a basic tutorial to this Court and the jury on the underlying technology at issue in this case.

In addition, as noted above, Professor Santi will need to offer his opinion on infringement by determining whether each and every element of the asserted claims can be found in Defendants' accused products.  As noted, O2 Micro's infringement contention charts set out its infringement theory on an element-by-element basis.  Similarly, the parties' expert reports track this element-by-element analysis, including Defendants' response to O2 Micro's infringement claim.  Professor Santi should conduct his own independent analysis in the same manner as has been done by the parties in this case.  The parties will provide him with blank versions of these claim charts in electronic format for his convenience.

As noted above, Professor Santi will also need to offer an opinion on patent invalidity based on anticipation by determining

whether or not each and every element of one or more of the patent's asserted claims can be found in any one item of prior art. As noted, Defendants' invalidity contention charts set out their invalidity-due-to-anticipation theory on an element-by-element basis. Similarly, the parties' expert reports track this element-by-element analysis, including O2 Micro's response to Defendants' anticipation claim. Professor Santi should conduct his own independent analysis on anticipation in the same manner as has been done by the parties in this case. The parties will provide him with blank versions of these claim charts in electronic format.

In addition, Professor Santi will need to offer his opinion on invalidity based on obviousness by determining whether or not it would have been obvious to combine the teachings of certain references to achieve the claimed invention. Defendants' invalidity contention charts also set out their invalidity-due-to-obviousness theory on an element-by-element basis. Similarly, the parties' expert reports track this element-by-element analysis, including O2 Micro's response to Defendants' obviousness claim. Professor Santi should conduct his own independent analysis on obviousness in the same manner as has been done by the parties in this case. The parties will also provide him with blank versions of these claim charts in electronic format.

After reviewing the materials provided, and conducting his own independent analysis, Professor Santi will prepare an expert report, containing a statement of his opinions and the reasons for his opinions. Professor Santi may want to attach the above-referenced claim charts that he may create as exhibits to his

5

1 report. The Court and parties are looking for a basic statement of
2 Professor Santi's opinions in this case. Although he may look to
3 other expert reports for guidance as to formatting and standard
4 content, no specific format is required. His report should be sent
5 to the parties, by express mail, within 35 days from the date that
6 he receives this order.

7 Following submission of Professor Santi's expert report, the
8 parties may ask him to appear for a deposition at a time and
9 location that is convenient. The parties may depose Professor
10 Santi the week before trial, April 23 through 27, 2006. At the
11 deposition, the parties can ask him questions and he will be given
12 the opportunity to explain his opinions in greater detail prior to
13 his testimony at trial.

14 Lastly, Professor Santi will need to testify at trial on his
15 opinions. The trial is scheduled to begin on April 30, 2007, and
16 will continue into the first two weeks of May. The Court and the
17 parties will attempt to accommodate Professor Santi's schedule and
18 to give him as much advance notice as possible as to what day (or
19 days) we will need him to testify. Trials are complex matters,
20 however, involving many witnesses, so flexibility will be required.
21 The parties will pay for all of Professor Santi's reasonable hotel
22 and travel expenses.

23 Professor Santi may contact the Court, by calling its clerk at
24 (510) 637-3542, if questions come up or if he encounters difficulty
25 in accomplishing his assigned tasks. The clerk will arrange a
26 conference call with the attorneys. He may also contact the Court
27 by letter, with a carbon copy to the parties, or by emailing the
28

6

clerk and "cc"-ing the parties.  The clerk's email address is sheilah_cahill@cand.uscourts.gov.  In addition, Professor Santi may contact the parties directly, by using the e-mail addresses that they have already provided to him, if he needs additional documents or other information.  Professor Santi, however, shall not contact only one party, as it is important that both sides be given the chance to communicate with him jointly if needed.  The parties will set up a conference call if necessary.

Subject to his agreement to do so, the parties will retain Professor Santi.  O2 Micro shall pay for half of Professor Santi's fees and expenses; MPS, ASMC and ASUSTeK shall pay for the other half.  Each side will deposit a retainer of $20,000 in the Cooley Godward Kronish and Howrey trust accounts respectively, which Professor Santi may bill at his hourly rate or at an agreed rate commensurate with the rates paid to the parties' expert witnesses.

IT IS SO ORDERED.

Dated: 3/12/07

CLAUDIA WILKEN
United States District Judge

7