IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>    Defendant.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/<br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation, <u>et al.</u>,<br><br>    Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS.<br>_____/ | No. C 04-2000 CW<br><br>(consolidated with No. C 06-2929 CW)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANTS' INEQUITABLE CONDUCT DEFENSE |

    Defendants in case No. C 06-2929 Monolithic Power Systems, Inc. and ASUSTeK Computers, Inc. seek a finding of inequitable conduct, arguing that O2 Micro International Limited's U.S. Patent

No. 6,396,722 (the '722 patent) is unenforceable because, during the prosecution of the '722 patent, O2 Micro intentionally withheld from the United States Patent and Trademark Office (PTO) material information.  O2 Micro denies this accusation.  Having considered all of the papers filed by the parties and the evidence presented, the Court finds and concludes that O2 Micro did not engage in inequitable conduct and enters its findings of fact and conclusions of law with respect to Defendants' inequitable conduct defense.

## LEGAL STANDARD

Patent applicants and their legal representatives have a duty to prosecute applications with candor and good faith.  Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995); 37 C.F.R. § 1.56(a).  A breach of this duty occurs when an individual associated with filing and prosecuting a patent application fails to disclose material information with an intent to deceive.  Union Pacific Resources Co. v. Chesapeake Energy Corp., 236 F.3d 684, 693 (Fed. Cir. 2001).

Proof of such inequitable conduct entails a two-step analysis.  The court must first determine "whether the withheld references satisfy a threshold level of materiality," and next "whether the applicant's conduct satisfies a threshold finding of intent to mislead."  Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1439 (Fed. Cir. 1991).  Both materiality and culpable conduct are questions of fact, and "each must be proved by clear and convincing evidence."  Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1122 (Fed. Cir. 1998).  Assuming satisfaction of both thresholds, the court balances materiality and

intent to determine whether the applicant's conduct is so culpable that the patent should be held to be unenforceable; the "more material the omission, the less culpable the intent required, and vice versa." Halliburton, 925 F.2d at 1439.

## FINDINGS OF FACT

I.  Background

In February, 1997, Dr. Yung-Lin Lin, the named inventor of the '722 patent, joined O2 Micro. The first project he worked on was for O2 Micro's client Dell Computers. Mathiowetz Dec., Ex. 1 at 551:24-24. Dell used O2 Micro's OZ962 and OZ963 products, which are inverter controllers, in some of its laptops. Id. at 552. These two products and subsequent versions of the OZ962, including OZ960A, OZ965 and OZ969, are referred to as O2 Micro's two-signal controllers. Unlike the invention claimed in the '722 patent, these two-signal controllers are not full-bridge products. Id.; see also '722 patent at cols. 11-14 (every claim contains a limitation for a "full-bridge switch configuration," a "full-bridge circuit" or "switches arranged in a full-bridge configuration").

According to Dr. Lin, the OZ962 and OZ963 did not have open lamp protection. Indeed, Dell noted "during some of the tests of the inverter that there was a sparking, like a fire arcing on the inventor board" and "that the inverter module could not turn on the display every time." Mathiowetz Dec., Ex. 1 at 554-58. Dr. Lin explained at trial that these two concerns are related to whether an open lamp protection circuit is built into the inverter. Id. These concerns also prompted him to begin working on the design of a new inverter controller. He called this project the "Full House

3

Project."

In designing his new and improved inverter controller, the invention at issue, Dr. Lin chose the four signal, full-bridge configuration, concluding that this configuration provided greater efficiency than O2 Micro's two-signal controllers.  Indeed, in the '722 patent, Dr. Lin identified O2 Micro's U.S. Patent No. 5,619,402 (the '402 patent) issued to Dr. Kwang Liu as related, but inferior, prior art having undesirable qualitites that he sought to avoid with his own invention.  See '722 patent.  Dr. Lin stated that he understood O2 Micro's two-signal controllers to be the "commercial embodiments" of the '402 patent.  Mathiowetz Dec., Ex. 3 at 119.  Dr. Lin sought to create an inverter controller that had open lamp protection, symmetrical wave forms, a full bridge circuit architecture and soft start functionality.

The parties dispute whether O2 Micro's two-signal controllers had open-lamp protection and other benefits claimed in the '722 patent.  O2 Micro's OZ969 data sheet, dated February 10, 1998, provides that the OZ969 contains open lamp protection:

> To prevent output voltage in an open lamp situation, OZ969 comes with a built-in open lamp protection (OLP).  This is done by an internal comparator, which compare[s] error amplifier output with a reference voltage of 2.5 V.  When an open lamp situation occurs, there is no feedback signal at the negative input of error amplifier and error amplifier will swing to more than 2.5 V.  This will trigger OLP and shut down the OZ969.

Armon Dec., Ex. E at 9.[1]  Dr. Lin states this is actually "over-

---

[1] O2 Micro points out that, at trial, Defendants failed to show that the OZ962, OZ963 and OZ969 data sheets qualified as prior art under 35 U.S.C. § 102.  See Mathiowetz Dec., Ex. 1 at 1204.  And Dr. Lin testified that he did not believe that the datasheets were publicly published prior to the § 102(b) critical date.  This

4

1  voltage protection," which he claims is different than the "true
2  open lamp protection" claimed in the '722 patent. Mathiowetz Dec.,
3  Ex. 2 at 169. At trial he testified that the "open-lamp
4  protection" discussed in O2 Micro's data sheets for its two-signal
5  controllers was "almost totally different" than that built into his
6  invention. Mathiowetz Dec., Ex. 1 at 733.

7  In addition, according to the OZ969 data sheet, O2 Micro's
8  two-signal controllers generated symmetrical wave forms and
9  included a "soft start circuit." Armon Dec., Ex. E. Dr. Lin
10 explained, however, that O2 Micro's two-signal controllers could
11 produce symmetrical waveforms only under certain operating
12 conditions; his invention produces symmetrical waveforms under all
13 conditions. Armon Dec., Ex. G at ¶ 5. The data sheet also provides
14 that O2 Micro's two-signal controllers support both "grounded
15 secondary and floating secondary designs." Armon Dec., Ex. E.
16 Two-signal controllers also have the ability to drive a four
17 switch, or full-bridge, power stage. As O2 Micro points out,
18 however, Defendants have produced no evidence to suggest that O2
19 Micro's two-signal controllers were actually used to drive a full-
20 bridge.

21 During the prosecution of the '722 patent and its parent U.S.
22 Patent No. 6,259,615 (the '615 patent),[2] neither Dr. Lin nor anyone

---

testimony is supported by the testimony of an O2 Micro employee
that it was not O2 Micro's policy to publish its data sheets.

[2] Dr. Lin is also the named inventor of the '615 patent. The '722 patent is a continuation of the '615 patent: it claims the benefit of the same filing date as the '615 patent application and contains the same specification as the '615 patent. Dr. Lin filed a provisional application for what later issued as the '615 patent

5

else submitted any data sheets or any other information concerning the technical design or functionality of O2 Micro's two-signal controllers. Nor did Dr. Lin or anyone at O2 Micro disclose sales data showing that O2 Micro offered for sale and sold its two-signal controllers in this country prior to July 22, 1998, the critical date under 35 U.S.C. § 102(b). See Armon Dec., Ex. I at 704-05, 711.

During the prosecution of the '722 and '615 patents, O2 Micro identified to the PTO its '402 patent as prior art, along with over eighty other prior art patents and publications. Among the identified prior art patents were the Henry '129 patent and the Payne '779 patent, two of the key references Defendants rely upon in their renewed motion for judgment as a matter of law. Dr. Lin stated that he believes that he gave O2 Micro's patent attorney copies of the OZ962, OZ960A and OZ969 data sheets. Id. at 118. The patent attorney, however, testified that, prior to November, 1999, he did not recall seeing any O2 Micro prototypes. Second Armon Dec., Ex. E at 142.

Dr. Lin further testified that his invention was developed to overcome the deficiencies in O2 Micro's two-signal controllers, not to build upon them. In particular, he explained that the simulation circuit diagram that he created in February, 1998, is much better than any of O2 Micro's existing products, including the OZ960. Mathiowetz Dec., Ex. 1 at 624. At trial, Dr. Lin

---

on July 22, 1999. He filed a utility application on November 9, 1999.

1 acknowledged that he asked C.C. Kuo, an O2 Micro employee, to
2 implement his open-lamp protection invention using an existing
3 OZ962 part.
4     Defendants accuse Dr. Lin, and O2 Micro, of knowingly,
5 intentionally and deceptively withholding from the PTO material
6 information, i.e., O2 Micro's data sheets and sales records for its
7 two-signal controllers.

II.  Materiality

In determining materiality, courts "have consistently referred to the definition provided in 37 C.F.R. § 1.56." Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., 394 F.3d 1348, 1352 (Fed. Cir. 2005). Title 37 C.F.R. section 1.56 provides that:

> information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
>     (i)  Opposing an argument of unpatentability relied on by the Office, or
>
>     (ii) Asserting an argument of patentability.

In addition, the Federal Circuit has concluded, "Information is material if there is 'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" Halliburton, 925 F.2d at 1440 (quoting 37 C.F.R. § 1.56).

Materiality of a reference is analyzed, not in a vacuum, but upon the overall degree of similarity between the omitted reference

7

1  and the claimed invention in light of other prior art before the
2  examiner.  <u>Baxter Int'l, Inc. v. McGaw, Inc.</u>, 149 F.3d 1321, 1328
3  (Fed. Cir. 1998).  A patent applicant must disclose any material
4  information to the PTO; the applicant's duty to disclose is not
5  limited to disclosing prior art.  <u>Critikon, Inc. v. Becton</u>
6  <u>Dickinson Vascular Access, Inc.</u>, 120 F.3d 1253, 1258 (Fed. Cir.
7  1997).  Indeed, the Federal Circuit instructs, "Information
8  concealed from the PTO may be material even though it would not
9  invalidate the patent."  <u>Li Second Family Ltd. P'ship v. Toshiba</u>
10 <u>Corp.</u>, 231 F.3d 1373, 1380 (Fed. Cir. 2000).  The Federal Circuit
11 "has emphasized, when a question of materiality is close, a patent
12 applicant should err on the side of disclosure."  <u>LNP Eng'q</u>
13 <u>Plastics, Inc. v. Miller Waste Mills, Inc.</u>, 275 F.3d 1347, 1361
14 (Fed. Cir. 2001).

15     Defendants argue that, like the undisclosed information in
16 <u>Baxter</u>, O2 Micro's two-signal controllers are highly material.
17 Their reliance on <u>Baxter</u>, however, is misplaced.  The facts here
18 are not, as Defendants claim, very similar to those in <u>Baxter</u>,
19 where the Federal Circuit affirmed the district court's finding
20 that a prior art device was highly material to patentability.  In
21 <u>Baxter</u>, the patentee developed and patented a device used to
22 administer medication in an IV system after it studied and
23 experimented with a prior art device by Borla; indeed, the Borla
24 device "formed the basis of the claimed invention."  149 F.3d at
25 1325, 1329.  Although the Borla device "was the only item in the
26 prior art that combined every claimed element of the '234 and '648
27 patent save for the pre-slit rubber septum and blunt cannula," the
28

8

patentee did not disclose it to the PTO. Instead, the patentee disclosed "multitudes of prior art," but not "the single most relevant piece of prior art that was used extensively in the development of the invention." Id. at 1330.

O2 Micro's two-signal controllers are not the single most relevant piece of prior art. As noted above, Defendants failed to establish at trial that these controllers are prior art. And, in their renewed motions for judgment as a matter of law, Defendants primarily rely on the Henry '129 patent and the Payne '779 patent. Nor do O2 Micro's two-signal controllers contain "every element" of the prior art in single device. Unlike in Baxter, here there is evidence suggesting that O2 Micro's two-signal controllers are cumulative and less material than other information provided to the PTO. Further, although Dr. Lin was inspired, in part, by the weaknesses of O2 Micro's two-signal controllers to create his invention, there is no evidence that he based his invention on the two-signal controllers. Dr. Lin asked Mr. Kuo to test his invention on the OZ962 months after he had already conceived of his invention.

In addition, although the '722 patent covers certain implementations of soft start and open-lamp protection, its claims do not cover any and all inverter circuits that have a soft start feature or an open-lamp protection feature. Rather, the '722 patent relates to inverter circuits that meet the particular limitations set forth in its claims, including a full-bridge drive network, a feedback signal indicative of power to the load, a predetermined minimum overlap/predetermined minimum power state,

and circuitry meeting the "only if" limitation.

Defendants fail to provide clear and convincing evidence that O2 Micro's two-signal controllers are highly material. Nonetheless, they do provide some clear and convincing evidence that there is a substantial likelihood that a reasonable examiner would consider O2 Micro's two-signal controllers important in deciding whether to allow the application to issue as a patent. Materiality is a matter of degree. Defendants establish that whether O2 Micro's two-signal controllers are at least somewhat material is close; thus, those controllers should have been disclosed to the PTO. See LNP Eng'g Plastics, Inc., 275 F.3d at 1361 ("when a question of materiality is close, a patent applicant should err on the side of disclosure").

As Defendants point out, to be material, information need not operate in exactly the same manner, provide the same performance, or disclose every single element that is disclosed in the asserted claims. Thus, the fact that O2 Micro's two-signal controllers did not contain full-bridge topology does not render those controllers immaterial. Prior art need not fully anticipate to be material. Regardless of whether there is evidence to show that O2 Micro's two-signal controllers were ever actually used to drive a full-bridge, it was known in the art at the time of Dr. Lin's invention that a two-signal controller could drive a half-bridge or a full-bridge. In addition, O2 Micro's two-signal controllers are not completely cumulative of evidence presented to the examiner because sales of the early two-signal controllers raised an on-sale bar

10

issue that was not disclosed to the PTO.[3] Other clear and convincing evidence is the testimony of Professor Enrico Santi, an independent witness retained by the parties jointly at the Court's direction, who concluded that claim 12 of the '722 patent was obvious in light of the combination of the Henry '129 patent and the OZ969 controller.

III.  Intent

The Federal Circuit instructs, "In a case involving an omission of a material reference to the PTO, there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference."  Baxter, 149 F.3d at 1329.  Defendants do not provide such evidence.  It is true that "a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead."  Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997) (quoting FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987)).  Here, however, as discussed above, the level of materiality is not high.  Indeed, as noted above, the question of whether O2 Micro's two-switch controllers are material is close.  Not surprisingly, because it is a close question, there is no clear proof that Dr. Lin knew, or even should

---

[3] Defendants raise this argument in their reply.  "It is well settled that new arguments cannot be made for the first time in reply."  Contratto v. Ethicon, Inc., 227 F.R.D. 304, 309 (N.D. Cal. 2005).  Nonetheless, because this argument does not affect the final outcome of the Court's findings and conclusions, the Court will consider it.

11

have known, that O2 Micro's two-switch controllers were material.

It is also true that intent need not be proven by direct evidence. Merck & Co., Inc. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422 (Fed. Cir. 1989). Because intent can rarely be proven by direct evidence, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." Bruno Indep. Living, 394 F.3d at 1354. But a finding of deceptive intent cannot be based on mere negligence, even gross negligence. Halliburton, 925 F.2d at 1442. And "a mere showing that references having some degree of materiality were not disclosed does not establish inequitable conduct." Id. Instead, a finding of intent to deceive requires that there be conduct that, when viewed in light of all the evidence, including evidence indicative of good faith, indicates sufficient culpability. Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir. 1996).

Defendants ask the Court to infer culpability based, in part, on Dr. Lin's detailed knowledge of O2 Micro's two-signal controllers. They point again to O2 Micro's data sheets establishing that the two-signal controllers have open lamp protection. Dr. Lin, however, credibly testified that the open lamp protection provided in those controllers was different than that provided in his invention. Contrary to Defendants' accusations, the Court does not find that any alleged misleading statements made by Dr. Lin and O2 Micro are sufficient to create an inference that they engaged in a sophisticated and ongoing campaign to hide the materiality of O2 Micro's two-signal controllers from

12

the PTO.  The Court finds that, in light of all the evidence, Defendants have failed to present clear and convincing evidence that Dr. Lin or O2 Micro formed a culpable intent to withhold O2 Micro's two-signal controllers from the patent examiner.

## CONCLUSIONS OF LAW

The Court concludes that Defendants have failed to meet their burden of proof to provide clear and convincing evidence that O2 Micro's two-signal controllers were material and that O2 Micro acted with an intent to deceive by not providing information about those controllers to the PTO.  Because the Court finds that both these threshold matters have not been satisfied, there is no need to balance materiality and intent.  The '722 patent is not unenforceable.

This order should resolve all outstanding claims in both cases of the consolidated action.  Within ten days, the parties shall submit a stipulated proposed judgment reflecting the jury verdict and any other dispositions of their claims.  If the parties cannot agree on a joint proposed judgment, they shall each file a proposed judgment to be considered by the Court.

IT IS SO ORDERED.

Dated:  9/28/07

_____
CLAUDIA WILKEN
United States District Judge