IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>    Defendant.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/<br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Island corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation, <u>et al.</u>,<br><br>    Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS.<br>_____/ | No. C 04-2000 CW<br><br>(consolidated with No. C 06-2929 CW)<br><br><br><br><br>ORDER DENYING DEFENDANTS' RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND CONDITIONAL MOTIONS FOR A NEW TRIAL, AND DENYING PLAINTIFF'S RENEWED CROSS-MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND CROSS-MOTION FOR NEW TRIAL |

    Defendants Monolithic Power Systems, Inc. (MPS) and ASUSTeK Computers, Inc. renew their motion for judgment as a matter of law that they do not infringe claims 12 and 14 of Plaintiff O2 Micro

1  International Limited's (O2 Micro) U.S. Patent No. 6,396,722 (the
2  '722 patent) under the doctrine of equivalents.  They move
3  conditionally for a new trial on this issue if the jury's verdict
4  invalidating claims 12 and 14 were to be overturned.  In addition,
5  Defendants renew their motion for judgment as a matter of law,
6  should the Court grant Plaintiff's cross-motion and find that they
7  literally infringe the '722 patent, that the patent's claims are
8  invalid due to prior invention by MPS.  They conditionally request
9  a new trial on this issue as well, also if the jury's verdict
10 invalidating claims 12 and 14 were to be overturned.

11    Plaintiff O2 Micro opposes Defendants' renewed motions for
12 judgment as a matter of law and conditional motions for a new
13 trial.  It also cross-moves for judgment as a matter of law that:
14 1) the '722 patent is not invalid based on the on-sale bar; 2) the
15 '722 patent is not invalid based on obviousness; and 3) claims 1,
16 2, and 18 of the '722 patent are literally infringed by the accused
17 products.  Plaintiff also moves for a new trial due to the trial
18 testimony of the court-appointed expert.

19    The matters were taken under submission on the papers.  Having
20 considered the papers submitted by both parties, the Court denies
21 both parties' motions.[1]

---

[1] Ordinarily, post-verdict motions for judgment as a matter of law are filed after the entry of judgment.  At the Court's direction, however, the parties' motions in this case were filed before judgment was entered.  Judgment was subsequently entered based on the jury's verdict and the Court's determinations of certain claims.  Because the motions had already been submitted at that time, the Court deems them filed within ten days of the entry of judgment, as required by Rule 50(b) of the Federal Rules of Civil Procedure.  No additional post-judgment motions need be made, and the parties' time for appeal will run from the date this

2

BACKGROUND

On May 15, 2007, the jury returned a verdict finding that Defendants did not literally infringe any of the claims in the '722 patent, but did infringe claims 12 and 14 under the doctrine of equivalents. However, while rejecting Defendants' argument that the patent was invalid due to anticipation or prior invention, the jury found that all relevant claims were invalid because of the on-sale bar and because they were obvious in light of prior art.

LEGAL STANDARD

I.  Judgment as a Matter of Law

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence. Fed. R. Civ. P. 50(b). Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict. Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper. See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

II. New Trial

A new trial may be granted if the verdict is not supported by the evidence. There is no easily articulated formula for passing

---

order is filed.

on such motions.  Probably the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

The Ninth Circuit has found that the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the evidence.  Landes, 833 F.2d at 1371.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  Id. Therefore, the standard for evaluating the sufficiency of the evidence is less stringent than that governing the Rule 50(b) motions for judgment as a matter of law after the verdict.

DISCUSSION

I.   Defendants' Motion

Defendants make three principal arguments in support of their motion for judgment as a matter of law that the accused products do not infringe claims 12 or 14 of the '722 patent under the doctrine of equivalents.  First, they argue that Plaintiff is barred from pursuing an infringement claim under this doctrine because of prosecution history estoppel.  Second, they claim that the asserted scope of equivalence would encompass prior art, and thus is invalid.  Third, they claim that there is insufficient evidence to support a verdict of infringement given the requirements of the

4

doctrine of equivalents.

As discussed below, the Court upholds the jury's verdict that claims 12 and 14 are invalid due to obviousness and the on-sale bar. Therefore, the Court need not consider Defendants' arguments that they did not infringe these claims, and their motion is denied as moot.[2]

II. Plaintiff's Motions

   A.   The on-sale bar

The jury found that all of the relevant claims in the '722 patent are invalid due to the on-sale bar. Under this statutory bar, a patent is invalid pursuant to 35 U.S.C. § 102(b) if the invention is both: 1) the subject of a commercial offer for sale in the United States more than one year prior to the date of the patent application; and 2) ready for patenting at the time of the offer. Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998). The jury likely based its verdict on a March, 1998 sales trip made by James Moyer, MPS's lead chip designer, to Taiwan. During that trip, Mr. Moyer met with Peter Liu of Ambit Broadband, a potential purchaser, and demonstrated a prototype of the first-generation MP1010 chip – the precursor to one of the groups of accused

---

[2] Defendants also move conditionally for a new trial on the issue of infringement under the doctrine of equivalents in the event that the jury's verdict invalidating claims 12 and 14 of the '722 patent is overturned. Because the Court does not overturn the jury's verdict, it need not rule on this conditional motion. Defendants further move for judgment as a matter of law that, should the Court find as a matter of law that the accused products infringe the '722 patent literally, the patent is invalid because MPS invented the infringing products first. Because the Court does not find literal infringement, it need not rule on this motion either.

1 products in this case.  After MPS agreed to make certain
2 modifications at Ambit's request, Ambit agreed to order a specific
3 quantity of chips.
4     Plaintiff now argues that the on-sale bar is not available to
5 Defendants because: 1) the products were not offered for sale in
6 the United States; 2) the discussions between MPS and Ambit did not
7 constitute an offer for sale in any event; and 3) the MP1010 was
8 not ready for patenting at the time the offer was made.  For the
9 following reasons, the Court rejects each of these arguments and
10 denies Plaintiff's motion for judgment as a matter of law that the
11 patent was not invalid due to the on-sale bar.
12         1.   Sale in the United States
13     Plaintiff first argues that Defendants cannot satisfy the
14 first element of <u>Pfaff</u> because the offer for sale was not made in
15 the United States.[3]  There is little case law examining the
16 requirement that the offer be made in the United States.  However,
17 <u>Robbins Co. v. Lawrence Manufacturing Co.</u>, 482 F.2d 426, 434 (9th
18 Cir. 1973), held that the requirement is met "if substantial
19 activity prefatory to a sale occurs in the United States."
20 Plaintiff is correct in noting that <u>Robbins</u> also held that an
21 "offer for sale, made in this country, is <u>sufficient</u> prefatory

---

[3]Defendants assert that Plaintiff waived its right to make this argument by not raising it in its original motion for judgment as a matter of law.  It is arguable that Plaintiff's pre-verdict motion, which simply alleged a lack of sufficient evidence to support the on-sale bar, did not preserve Plaintiff's right to argue now that the sale took place outside the United States.  The Court need not resolve this issue, however, because it finds sufficient evidentiary support for a finding that the offer for sale was made in the United States.

activity occurring here." Id. (emphasis added). However, there is no support for Plaintiff's contention that an offer made in the United States is necessary under Robbins.

While MPS's actual offer to sell the MP1010 chip to Ambit took place in Taiwan, it cannot be considered in a vacuum. The arrangements for MPS's sales trip were made from its United States offices, and MPS communicated from the United States with Ambit about the sale. The products were also made in and shipped from this country. Given this additional evidence, the fact that the offer itself was not made while the offeree and offeror were in the United States is not dispositive. The Court finds that sufficient activity prefatory to the sale occurred in the United States to satisfy the first prong of the Pfaff test.

### 2. Offer for sale

In order for the on-sale bar to apply where, as here, no actual sale was consummated prior to the critical date, a defendant must demonstrate by clear and convincing evidence activity that rises to the level of a formal offer under general principles of contract law. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045-47 (Fed. Cir. 2001). Plaintiff argues that the interaction between MPS and Ambit did not constitute such an offer.

What constitutes an offer will depend on the facts of the particular case. In determining whether an offer has been made, courts may look to interpretive principles contained in the Uniform Commercial Code (UCC) and the Restatement of Contracts. See id. at 1047-48. The Restatement defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another

7

person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24. Plaintiff characterizes Mr. Moyer's trip to Taiwan as promotional in nature and asserts that too many details – including the price of the MP1010 parts – were left unresolved after his meeting with Ambit to support the conclusion that he made an offer.

Mr. Moyer testified that, at the meeting with Ambit, Mr. Liu was enthusiastic about incorporating the MP1010 chip in Ambit's products. Tr. at 905. Mr. Moyer came away from the meeting with an agreement to ship parts according to a specified schedule. Id. at 906. This testimony is corroborated by Mr. Moyer's notes from his Taiwan trip and a shipping schedule prepared by Mr. Liu. Trial Ex. 546, Mathiowetz Dec. Ex. E. The shipping schedule requests specific quantities of parts and sets target dates by which production goals should be met. Id. at 1049. John Shannon, a co-founder and former employee of MPS was also present at the meeting with Ambit. He confirmed Mr. Moyer's account that at the meeting, Ambit "made a commitment to move forward." Tr. at 1065. Considered as a whole, this evidence is sufficient to support a finding that MPS made an offer to sell the MP1010 chip to Ambit in March, 1998. The fact that certain terms were not finalized at the meeting does not preclude the conclusion that an offer was made. The UCC specifically states that a contract for sale may be formed even though multiple terms, including the price term, are left open. U.C.C. §§ 2-204, 2-305.

In support of its position, Plaintiff cites Linear Technology Corp. v. Micrel, Inc., 275 F.3d 1040 (Fed. Cir. 2001), which held

8

that mere promotional activity does not constitute an offer. However, <u>Linear Technology</u> is distinguishable from this case.  In that case, the plaintiff had internally developed an extensive marketing strategy, distributed advertising materials to potential customers and discussed providing samples to certain customers before the product's release date.  While it received numerous purchase orders prior to the release date, it did not commit to filling any of these orders until after the release date.  The court found that none of these actions sufficiently demonstrated the intent to be bound that is required for an offer.  In contrast to the plaintiff in <u>Linear Technology</u>, here MPS made contact with a specific customer and agreed to ship a certain quantity of parts as a result of that customer's order.  This is sufficient for a jury to find that MPS intended to be bound by its offer.

Plaintiff argued to the jury that MPS did not make an offer for sale, and the jury rejected this argument.  Given the corroborated evidence at trial, the Court cannot conclude that, under general principles of contract law, no reasonable jury could have found that MPS's activities constituted an offer for sale. The Court therefore finds that the verdict on this point is supported by sufficient evidence.

### 3. Device ready for patenting

Plaintiff also argues that because the first-generation MP1010 prototype that Mr. Moyer demonstrated at his meeting with Ambit was later modified to incorporate open lamp protection and current-control circuitry, which Plaintiff claims are two essential elements of the patent, the device offered for sale at the March 6,

9

1998 meeting was not "ready for patenting," and thus fails to meet the second element of Pfaff. However, Pfaff does not require that an invention be reduced to practice in order to be complete and ready for patenting. 525 U.S. at 66. It requires only that the concept of the invention be complete.[4] Id. at 67.

At trial, Mr. Moyer testified that he and Mr. Shannon came up with the idea for providing open lamp protection on the flight home from Taiwan. Tr. at 909. Mr. Shannon testified that it took about two days after his meeting with Ambit to change the chip to a current-control design. Tr. at 966. Their testimony is corroborated by a March 15, 1998 email from Mr. Moyer to Mr. Liu of Ambit. Brigham Reply Dec. Ex Q. The jury was entitled to conclude from this evidence that the conception of the second-generation MP1010 chip was completed prior to the critical date of July 22, 1998 and, as noted above, that this chip was offered for sale prior to the critical date as well.

B. Obviousness

Plaintiff moves for judgment as a matter of law that the asserted claims in the '722 patent are not invalid due to obviousness, arguing that there is insufficient evidence to support the jury's verdict on this point. Specifically, Plaintiff claims that there is insufficient evidence that certain elements of the

---

[4]Defendants correctly note that many of the cases Plaintiff cites were decided under the Federal Circuit's pre-Pfaff rule, which required that an invention be "substantially complete" and took account of the "totality of the circumstances." Later Federal Circuit cases have employed the standard set forth in Pfaff, which focuses on the date of conception. See, e.g., Robotic Vision Sys., Inc. v. View Eng'g, Inc., 249 F.3d 1307, 1311-12 (Fed. Cir. 2001) (comparing the pre-Pfaff and post-Pfaff tests for the on-sale bar).

10

claims exist in prior art and, in any event, there is insufficient evidence that the proper combination of these elements would be obvious to a practitioner skilled in the art. However, Plaintiff does not so much assert the complete absence of evidence as argue that the jury was not entitled to credit the evidence and come to its conclusions in the way that it did. In so arguing, Plaintiff repeatedly asks this Court to substitute its judgment for that of the jury. As explained below, there is no basis for doing so, and the Court denies Plaintiff's motion accordingly.[5]

1.  Evidence of a flow-through switch (claims 2 and 9)

One of the elements of claims 2 and 9 is a "flow-through switch." At trial, Dr. Horenstein testified that the sawtooth generator in the Henry patent, "which has an output that goes between high and low states" serves the function of a flow-through switch. Tr. at 1200. Plaintiff argues that Dr. Horenstein's explanation is insufficient and contradicts the Court's claim construction, which defines a flow-through switch as "a switch which passes a selected voltage signal to its output node." The Court disagrees on both points. The jury was entitled to credit Dr. Horenstein's expert opinion on the flow-through switch element. This opinion, incidentally, is not inconsistent with Professor

---

[5] Defendants again argue that many of Plaintiff's arguments in support of its motion for a judgment of non-obviousness are waived because Plaintiff did not make them in its pre-verdict motion. Plaintiff did, however, state in its pre-verdict motion that there was insufficient evidence to support a finding of obviousness. Tr. at 1368. As with Defendants' assertion that Plaintiff waived its "sale in the United States" argument, the Court need not resolve this issue because it finds sufficient evidentiary support for the jury's finding of obviousness.

11

Santi's testimony on the matter, as Plaintiff claims.  See Tr. at 336-38.

### 2. Evidence of the second state (claims 1, 2, 9 and 18)

Claims 1, 2, 9, and 18 specify an inverter with a second state that "overlaps the first signal with a predetermined minimum overlap to deliver a predetermined minimum power to the load." Plaintiff argues that because the Henry patent does not teach a minimum output state under a fault condition but, rather, turns off the controller during such a condition, it cannot satisfy the "predetermined minimum power" element.  This is at odds with Plaintiff's endorsement of Dr. Rhyne's testimony, which it cited in support of the jury's verdict that claim 14 was infringed under the doctrine of equivalents, that a complete shutdown "is about as predetermined a minimum overlap as I can think of."  Pl.'s Mot. at 11 (citing Tr. at 425-26).  Additionally, Dr. Horenstein testified about the way in which the Henry patent specifies a minimum overlap state that provides a minimum power output to the controller.  Tr. at 1196.  This provides ample evidence to support the jury's verdict.

### 3. Evidence of elements of claims 12 and 14

Plaintiff also claims that there is insufficient evidence to establish in the prior art claim 12's requirement that power be delivered to the load "only if" the feedback signal is above a predetermined threshold.  Professor Santi testified, however, that the Henry patent teaches a circuit that "carries the load only if that current feedback signal is above the threshold given."  Tr. at 338; see also Tr. at 320.  Dr. Horenstein also testified that there

12

were multiple examples of prior art utilizing the "only if" functionality stated in claim 12.  See Tr. at 1202-03, 1102-04.

In its reply, Plaintiff also argues that the Henry patent cannot be used to satisfy the "only if" element of claim 12 because it does not use overlap control as a means of regulating power to the load.  However, Professor Santi's testimony established that phase shift modulation, which the accused products employ as a means of controlling overlap, is a widely known technique in the prior art.  Tr. at 408; see also Professor Santi's Expert Report, Brigham Reply Dec. Ex. D, at 12-13.  Taken together, the evidence was sufficient for a reasonable jury to conclude that each element of claim 12 could be found in the prior art.

Plaintiff's arguments that not all of claim 14's limitations are found in prior art echo its arguments about the second state in claims 1, 2, 9, and 18.  This is not surprising, in that the difference between claim 14 and claim 12, on which it is dependent, is the addition of a second pulse signal having a minimum overlap with the first pulse signal to reduce power to a predetermined minimum, which is an element of claims 1, 2, 9, and 18.  Just as the evidence was sufficient for the jury to find those claims obvious in light of prior art, so it was sufficient to find claim 14 obvious as well.  See also Tr. at 1204-05.

        4.  Combination of elements in the prior art

Plaintiff further argues that, even if Defendants could show the existence of each element of the '722 patent in the prior art, there is insufficient evidence that the combination of these elements was obvious.  As was its argument that there is

13

insufficient evidence of each element in the prior art, its argument here is based largely on an asserted lack of specificity in the testimony supporting a finding of obviousness. See KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1741 (2007) (to support summary judgment of invalidity, "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness").

Plaintiff cites several snippets of testimony and portrays them as bald conclusions of obviousness. Yet it fails to account for the abundance of testimony underlying those conclusions. There was ample evidence – indeed, too much to recite here – that the '722 patent "only unite[d] old elements with no change in their respective functions," KSR, 127 S. Ct. at 1739, in a way that would have been obvious to a person skilled in the art. See, e.g., Tr. at 260, 319-21, 815, 1106–18, 1190-1207. The fact that there was also evidence to the contrary (including some evidence of Plaintiff's commercial success) or that Plaintiff's expert came to a different conclusion regarding obviousness provides no basis for overturning the jury's verdict. The jury was entitled to conclude from the sum of the evidence presented at trial that a person skilled in the art would have had reason to combine the existing elements to create a product covered by the claims in the '722 patent.

C. Literal infringement

Plaintiff asks the Court to find that claims 1, 12 and 18 of the '722 patent are literally infringed by the accused products because various portions of Professor Santi's and Dr. Horenstein's

testimony are purportedly inconsistent with the Court's claim construction.  Specifically, Plaintiff claims that these witnesses did not adhere to the Court's construction of the terms "predetermined," "feedback control loop circuit," "pulse generator," "only if," "first pulse signal" and "second pulse signal."  The Court has reviewed the testimony cited by Plaintiff, and finds nothing inconsistent with its claim construction.  Plaintiff's arguments are not persuasive and, in any event, are waived because it did not raise them in its pre-verdict motion for judgment as a matter of law; that motion argued only that the evidence could support no finding other than one of literal infringement.  See Docket No. 1016 at 6-9.

    D.   New trial

Plaintiff moves for a new trial because of what it describes as Professor Santi's "incompetent and legally erroneous opinions." Rule 706 of the Federal Rules of Evidence clearly permits the Court to appoint an expert and allow him to testify at a jury trial on contested issues.  Fed. R. Evid. 706(a).  It also permits the Court to disclose to the jury that the expert is Court-appointed.  Fed. R. Evid. 706(c).

The Court considered Professor Santi's significant experience prior to appointing him, and finds nothing in his testimony to support Plaintiff's assertion of his "utter incompetence."  There is no basis for Plaintiff's assertion that a gross "miscarriage of justice" has occurred.  Furthermore, Plaintiff's claims that the jury blindly followed Professor Santi's testimony are belied by the verdict, which differed from Professor Santi's conclusions on

15

several points.  While a Court-appointed expert would not be appropriate in every case, having presided over a previous trial with the same technology at issue, the Court found the technology particularly complex and difficult to understand.  Plaintiff's motion for a new trial is denied.

## CONCLUSION

For the foregoing reasons, Defendants' renewed motions for judgment as a matter of law and conditional motions for a new trial are DENIED.  Plaintiff's renewed cross-motions for judgment as a matter of law and for a new trial are DENIED.  The judgment entered according to the jury's verdict shall stand.

IT IS SO ORDERED.

Dated: 10/30/07

CLAUDIA WILKEN
United States District Judge

16